ROBERT F. MALONEY, JR., ADMINISTRATOR (ESTATE OF ANITA MALONEY), ET AL. *v.* MICHAEL CONROY ET AL. (13342)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued May 12—decision released July 26, 1988

*Richard A. Fuchs*, with whom was *James D. Horwitz*, for the appellant (plaintiff Susan Maloney).

*Bryan L. LeClerc*, with whom was *Thomas L. Brayton*, for the appellee (named defendant).

*Michael P. Del Sole*, with whom was *Stephen P. Sachner*, for the appellees (defendant George H. Dickenson et al.)

SHEA, J. The plaintiff Susan Maloney filed an amended complaint[1] against two physicians, Michael Conroy and George Dickenson, and also the Meriden-Wallingford Hospital seeking damages for a severe emotional disturbance alleged to have resulted from the malpractice of the defendants in treating her mother, Anita Maloney. After the trial court had granted motions of the defendants to strike her complaint, the court rendered a partial judgment against the plaintiff. In her appeal the plaintiff has raised the single issue of whether one who is closely related to a victim of alleged malpractice may recover for a severe emotional disturbance claimed to have resulted from observing the malpractice perpetrated on the victim. We hold that a bystander to medical malpractice may not recover for emotional distress and accordingly find no error in the striking of the complaint by the trial court.

---

[1] This action was commenced in 1982 by the administrator of the estate of Anita Maloney to recover damages for malpractice alleged to have resulted in her death. The fourth count of the complaint alleged a cause of action in behalf of the plaintiff Susan Maloney as a result of being "deprived of the friendship, companionship, guidance, love, affection and society of her mother Anita Maloney, all to her damage." On September 28, 1987, the claim of the estate was withdrawn as to all defendants. The plaintiff Susan Maloney then proceeded to file a "seventh amended complaint" dated September 30, 1987, setting forth her claim of "severe emotional and mental distress, and pain and suffering," which is the subject of this appeal.

For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted. *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). The facts set forth in the complaint that are pertinent to this appeal may be summarized as follows: The plaintiff, who lived with her mother until the time of her mother's death, was present at bedside while her mother was being treated by the defendants. Following an operation on her mother, the plaintiff observed her mother's health deteriorate under the treatment of the defendants and culminate in death. The suffering and death of the mother were caused by the negligence of the defendants in failing to care for her in a reasonably competent manner, including their failure to heed several requests of the plaintiff that they investigate various symptoms she had observed relating to her mother's deteriorating condition. The defendants knew or should have known that their conduct was likely to cause the unreasonable risk of severe psychological, physiological and emotional distress that the plaintiff ultimately did suffer as a result of their negligent treatment of her mother. As a result of the emotional distress caused by the defendants' negligence, the plaintiff has incurred expenses for treatment of her mental condition and her ability to carry on her normal activities has been impaired.

In *Strazza* v. *McKittrick*, 146 Conn. 714, 718–19, 156 A.2d 149 (1959), where this court first dealt with a bystander emotional disturbance claim based upon negligence, we held unequivocally that a mother could not recover for "nervous shock resulting from fear of injury to her child" after a truck had run into a porch on which the mother, who heard the crash from inside the house, had told the child to wait. We relied upon the view prevailing generally at that time that one could

not recover "for injuries occasioned by fear of threatened harm or injury to the person or property of another." Id.

At our next encounter with such a claim in *Amodio* v. *Cunningham,* 182 Conn. 80, 438 A.2d 6 (1980), where the circumstances were quite similar to the present case, we upheld the trial court in striking a count of the complaint alleging a cause of action in behalf of a mother for physical, mental and emotional harm caused by witnessing the death of her daughter, as well as the deterioration of her daughter's health, that had resulted from the malpractice of the defendants. We noted, however, the "divergence of opinion among the jurisdictions regarding the recognition of a cause of action for emotional distress to a bystander arising from witnessing the negligently inflicted injury of another." Id., 84. We discussed the view of the New York Court of Appeals in *Tobin* v. *Grossman,* 24 N.Y.2d 609, 249 N.E.2d 419, 301 N.Y.S.2d 554 (1969), holding that "a cause of action does not lie for emotional injury sustained by a plaintiff solely as a result of injuries inflicted directly upon another regardless of the relationship of the parties or the fact that the plaintiff was an eyewitness to the negligent act." *Amodio* v. *Cunningham,* supra, 85. We also considered the opinion of the California Supreme Court in *Dillon* v. *Legg,* 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968), in which a bare majority of the court recognized a cause of action for emotional distress on the part of a mother who had seen her child being struck and killed by a negligently operated automobile that did not endanger the mother. In *Dillon* the court set forth three criteria for determining whether the injury to the plaintiff was reasonably foreseeable, the standard touchstone of liability for negligence, in a particular case: "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether

the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." Id., 740–41.

The *Amodio* opinion analyzed several later California cases applying *Dillon* in medical malpractice cases as "imposing a policy limitation upon the liability for emotional distress suffered by a witness to alleged negligence by requiring that the plaintiff observe a negligent act contemporaneously causing injury to the third party." *Amodio* v. *Cunningham,* supra, 92. Because the complaint in Amodio indicated "that the injuries suffered by the plaintiff's child became manifest a considerable period of time after the alleged negligence of the defendants occurred," the court held that, "even were we inclined to adopt the approach taken in *Dillon* and the cases relying thereon, the complaint in the present case would nevertheless fail to state a cognizable cause of action." Id.

The trial court in this case similarly concluded that the complaint did not allege that the plaintiff had suffered "an injury contemporaneously with the sensory perception of the alleged negligent conduct of the defendants" or that the defendants had committed "any positive act impacting contemporaneously upon her," noting that the "alleged negligent conduct consisted of a failure to act." The plaintiff has not attempted to distinguish the allegations of her complaint from those in *Amodio,* but maintains that a more recent California case, *Ochoa* v. *Superior Court,* 39 Cal. 3d 159, 703 P.2d 1, 216 Cal. Rptr. 661 (1985), has modified the contemporaneous sensory perception requirement of *Dillon* to allow a recovery for emotional disturbance resulting from negligence that does not fall

within the category of a "brief and sudden event viewed contemporaneously by the plaintiff."

In *Ochoa,* as in this case, the plaintiff, over a period of two days, repeatedly called to the attention of the doctor and other medical personnel treating her son various symptoms she had observed indicating that his illness, which resulted in his death, was far more serious than had been assumed. The California Supreme Court concluded that its former view that a "sudden and brief event" was necessary to satisfy the second *Dillon* guideline of contemporaneous perception of the negligent act should not bar recovery "when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child . . . ." Id., 170.

We agree with the plaintiff that her complaint sufficiently stated a cause of action for emotional disurbance under the *Dillon* criteria as modified in *Ochoa.* She has alleged that she observed her mother's condition deteriorate under the care of the defendants and that her requests that certain symptoms of her mother be given attention were never heeded, implying her awareness that the defendants' neglect was harming her mother. We conclude, nevertheless, that the court properly granted the motion to strike the complaint, because we are not inclined to follow the lead of the California courts in allowing a bystander to recover for emotional disturbance resulting from malpractice upon another person that a bystander may have observed.

Because the etiology of emotional disturbance is usually not as readily apparent as that of a broken bone following an automobile accident, courts have been concerned, apart from the problem of permitting bystander recovery, that recognition of a cause of action for such an injury when not related to any physical trauma may

inundate judicial resources with a flood of relatively trivial claims, many of which may be imagined or falsified, and that liability may be imposed for highly remote consequences of a negligent act. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 54, pp. 359–61. Perhaps for this reason, even those courts that permit recovery for emotional disturbance alone have erected some barriers not applicable to bodily injury claims. Thus, § 436A of the Restatement takes the position that "the negligent actor is not liable when his conduct results in the emotional disturbance alone, without the bodily harm or other compensable damages." 2 Restatement (Second), Torts § 436A, comment a. This court, however, in *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 344, 398 A.2d 1180 (1978), concluded that "there is no logical reason for making a distinction, for purposes of determining liability, between those cases where the emotional distress results in bodily injury and those cases where there is emotional distress only." We did, nevertheless, because of our concern "not to 'open up a wide vista of litigation in the field of bad manners' "; id., 345, quoting C. Magruder, "Mental and Emotional Disturbance in the Law of Torts," 49 Harv. L. Rev. 1033, 1035 (1936); impose a condition for emotional distress recovery that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Montinieri* v. *Southern New England Telephone Co.*, supra. This condition differs from the standard foreseeability of the risk of harm requirement for negligence liability generally in that it focuses more precisely upon the nature of the harm to be anticipated as a prerequisite to recovery even where a breach of duty might otherwise be found, as where a telephone company wrongfully discloses the address of a customer with an unlisted telepone number. Id., 338–40.

When the complication of liability to a bystander for emotional distress is injected into the scene, the concerns that have placed restrictions upon claims for emotional distress by those directly affected by the negligent act are enhanced. The present case, for example, poses the troublesome question of causation involved in distinguishing the plaintiff's natural grief over the loss of her mother, with whom she had lived for many years and whose death she might well have had to bear even in the absence of malpractice, from the effects upon her feelings of her belief that the suffering and death of her mother were attributable to the defendants' wrongful conduct.[2] Indeed, § 313 of the Restatement expressly disavows the applicability of the rule of that section, approving a cause of action for emotional distress in behalf of the person directly affected by the unintended wrongful conduct, in situations "where the emotional distress arises solely because of harm or peril to a third person, and the negligence of the actor has not threatened the plaintiff with bodily harm in any other way." 2 Restatement (Second), Torts § 313 (2), comment d. This view is consistent with our decision in *Strazza* v. *McKittrick,* supra, 719, where we held that a mother could recover for the injuries she suffered from the fright of hearing a truck crash into the porch where she thought her child was waiting "[t]o the extent that these injuries resulted from fear of injury to herself . . . but she cannot

---

[2] In *Ladd* v. *Douglas Trucking Co.,* 203 Conn. 187, 196, 523 A.2d 1301 (1987), this court held that a wife could not pursue her personal claim for loss of consortium arising from the death of her husband in an accident, though we recognized her cause of action for ante-mortem consortium. We had previously, in *Foran* v. *Carangelo,* 153 Conn. 356, 216 A.2d 638 (1966), held that the minor children of a deceased mother, as well as her husband, could not recover for the loss of the decedent's "care and affection" resulting from her death. The ground relied upon for these decisions was that General Statutes § 52-555 allowed only the estate of the decedent to recover for a wrongful death. To the extent that the plaintiff in this case seeks damages because of the effects upon her of the loss of her mother, her claim would be precluded by our decisions in *Ladd* and *Foran.*

recover for nervous shock resulting from fear of injury to her child."

Section 436 of the Restatement does, however, sanction a cause of action for bodily harm resulting "solely from the internal operation of fright or other emotional disturbance" on behalf of not only the person who has been directly subjected to the risk of bodily harm by the actor, but also on behalf of a member of the immediate family of the victim who was present at the occurrence of the victim's injury or peril and thus sustained an emotional disturbance producing bodily harm. 2 Restatement (Second), Torts § 436 (3), comments f and g. It is made clear in § 436A that negligent conduct resulting in emotional disturbance alone, without bodily harm or other compensable damage, is not a sufficient basis for liability. 2 Restatement (Second), Torts § 436A. It should be noted that the complaint in the present action does not claim that the emotional distress the plaintiff suffered from the defendants' malpractice toward her mother resulted in any "bodily harm" within the meaning of § 436A and, accordingly, the plaintiff does not rely upon that authority.[3]

The plaintiff argues that the criterion for liability to a bystander for negligently caused emotional disturbance should be, as it is in negligence cases generally, the foreseeability that harm of the general nature of that suffered is likely to result. See *Orlo* v. *Connecticut Co.*, 128 Conn. 231, 237, 21 A.2d 402 (1941). Most of the courts and commentators that have considered the matter, however, have recognized the necessity for

[3] Paragraph 21 of the complaint alleges that the defendants "knew or should have known that their conduct was likely to cause the unreasonable risk of severe psychological, *physiological* and emotional distress to the plaintiff." (Emphasis added.) Paragraph 22, however, alleges simply that the plaintiff "has suffered and will continue to suffer severe emotional and mental distress, and pain and suffering," omitting any reference to physiological distress.

imposing some rather arbitrary limitations on the right of a bystander to recover for emotional distress that are not applied in other negligence actions. Annot., "Right to Recover Damages in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at Witnessing Such Injury," 29 A.L.R.3d 1337, 1344–46; W. Prosser & W. Keeton, supra, § 54, pp. 365–66. "It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends." W. Prosser & W. Keeton, supra, § 54, p. 366. Some courts have simply applied the "unforeseeable plaintiff" rationale of Justice Cardozo in *Palsgraf* v. *Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), even though it takes no great prescience to realize that friends or relatives of a seriously injured accident victim will probably be affected emotionally in some degree. *Resavage* v. *Davies,* 199 Md. 479, 86 A.2d 879 (1952); *Cote* v. *Litawa,* 96 N.H. 174, 71 A.2d 792 (1950); *Waube* v. *Warrington,* 216 Wis. 603, 258 N.W. 497 (1935). Others have limited recovery for emotional distress to those who were personally within the "zone of danger." *Keck* v. *Jackson,* 122 Ariz. 114, 593 P.2d 668 (1979); *Stadler* v. *Cross,* 295 N.W.2d 552 (Minn. 1980); *Vaillancourt* v. *Medical Center Hospital of Vermont, Inc.,* 139 Vt. 138, 425 A.2d 92 (1980). Even those courts in the vanguard of the movement toward permitting bystander recovery have imposed some constraints not generally applicable to other negligence actions. *Dillon* v. *Legg,* supra, 739–46. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem

for the law is to limit the legal consequences of wrongs to a controllable degree." *Tobin* v. *Grossman,* supra, 619.

We are not inclined to resume our dalliance with the *Dillon* guidelines that we held not to be satisfied when we disposed of the malpractice emotional disturbance claim in *Amodio* that was so similar to the case before us. The subsequent modification in *Ochoa* that a "sudden and brief event" was not necessary to satisfy the *Dillon* requirement of "sensory and contemporaneous observance of the accident," allowing those like this plaintiff to bring actions for emotional disturbance based upon their observation of the course of treatment of an alleged malpractice victim over an extended period of time, demonstrates to us the ineffectiveness of those guidelines in screening out claims of any family member for the grief he has suffered from the loss of a loved one. Whatever may be the situation in other contexts where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice on another person, we should return to the position we articulated in *Strazza* that "there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another." *Strazza* v. *McKittrick,* supra, 719.

To allow recovery by one, like the plaintiff, who has been more or less constantly "at the bedside" of the malpractice victim during the period of treatment is likely to cause hospitals and other medical treatment facilities to curtail substantially the extent of visitation of patients that is presently permitted. Such a response by providers of medical care to the risk of liability to visitors whose sensitivity and relationship to the patient may result in emotional disturbances from observing treatment of loved ones that they view as improper would seem inevitable if such claims were to become more frequent. The restriction of current liberal prac-

tices with respect to patient visitation in order to reduce the incidence of bystander emotional disturbance claims would be a regrettable social consequence of enlarging the right to recover for emotional disturbances based upon the impact of medical malpractice upon bystanders.

Another undesirable sequel that is likely to follow upon our creation of a duty to a patient's visitors or relatives is that medical personnel may feel obligated to respond to the usually uninformed complaints of visitors concerning the treatment of patients more for fear of stimulating emotional disturbances upon the part of the visitors than because of the merits of the complaint. Medical judgments as to the appropriate treatment of a patient ought not to be influenced by the concern that a visitor may become upset from observing such treatment or from the failure to follow some notion of the visitor as to care of the patient. The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients.

Obviously, if the attention of medical practitioners is properly called to some deficiency in the treatment of a patient by anyone, that circumstance may be significant in deciding whether there has been malpractice. It is, however, the consequences to the patient, and not to other persons, of deviations from the appropriate standard of medical care that should be the central concern of medical practitioners. In the case before us, if the defendants should have responded to the various requests the plaintiff alleges she made about her mother's condition, they should be held liable for the consequences of their neglect to the patient or her estate rather than to the plaintiff.

It is a fundamental assumption of jurisprudence that rules of law have an impact on the manner in which

society conducts its affairs. We are persuaded that the recognition of a cause of action under the circumstances pleaded in the complaint would have consequences detrimental to the community as a whole that outweigh the benefit a few hypersensitive individuals would be likely to derive from permitting such an action to proceed. Accordingly, we find no error on the part of the trial court in granting the motion to strike the complaint.

There is no error.

In this opinion the other justices concurred.