[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE (#105)
The plaintiffs, Claudia Hendrickson and Joyce Carboni, have brought this action against the defendant, Philip Frick, for injuries arising out of the alleged sexual assault of Hendrickson.
In count one, it is alleged that Hendrickson is currently nineteen years old and is the daughter of Carboni, and that both are residents of the State of Connecticut. The plaintiffs allege that the defendant was convicted of two counts of sexual assault upon a minor and is currently serving a sentence of three and one half to four years imprisonment at the Vermont Correctional Facility in St. Johnsbury, Vermont.
The plaintiffs allege that during the period from 1976 to 1982, in the State of Connecticut, the defendant intentionally, unlawfully and without Hendrickson's consent, sexually assaulted and battered her on diverse occasions, when she was then between the ages of nine and twelve. The plaintiffs further allege that in February and June of 1986, at the age of twelve, Hendrickson, as the result of the defendant's sexual assault and battery of her, was forced to undergo major surgery, including a partial hysterectomy. The plaintiffs allege that this resulted in a ninety five percent certainty that Hendrickson would never be able to bear children.
The plaintiffs allege that during the period from 1986 to 1988, the defendant continued to sexually assault and batter Hendrickson. The plaintiffs allege that in 1988 Hendrickson informed Carboni that the defendant had sexually assaulted and battered her during the above periods. The plaintiffs allege that on December 16, 1991, the defendant acknowledged that he had sexually assaulted and battered Hendrickson in that he had engaged in sexual acts with a minor under the age of sixteen during the period from November of 1985 to July of 1986.
The plaintiffs allege that as a direct and proximate result of the acts of the defendant, Hendrickson suffered severe and permanent physical, emotional and psychological injury which will continue for the rest of her life, require CT Page 3589 psychotherapy, threaten her future relationships and prevent her from bearing children. In addition, the plaintiffs allege that Hendrickson was required to expend sums of money for the treatment of her medical and psychological injuries, and will incur expenses for future treatment.
The plaintiffs further allege that the acts of the defendant were done willfully, maliciously and in wanton disregard of the rights of Hendrickson, entitling her to punitive damages.
In count two, the plaintiffs allege that as the result of the defendant's sexual assault and battery of Hendrickson, Carboni had suffered and continues to suffer severe emotional, psychological and physical injuries requiring long term psychotherapy. In addition, the plaintiffs allege that Carboni will never be able to experience natural grandmotherhood, and her future relationships are jeopardized. Carboni seeks compensatory and punitive damages for her alleged injuries.
The defendant filed a motion to strike count two dated December 21, 1992. The motion was accompanied by a memorandum of law in support pursuant to Practice Book Sec. 154. The plaintiff filed a memorandum in opposition dated January 14, 1993.
"The motion to strike is used to test the legal sufficiency of a pleading." Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989), citing Practice Book Sec. 152. The motion to strike "admits all facts well pleaded" it does not admit legal conclusions or the truth or accuracy of the opinions stated in the pleadings." Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). The court "must construe the complaint in the manner most favorable to the pleader." Blancato v. Feldspar Corporation, 203 Conn. 34,36, 522 A.2d 1235 (1987).
As a preliminary matter it appears that the plaintiff has asserted several causes of action in a single count contrary to Practice Book Sec. 138. Practice Book Sec. 138 provides:
 When separate and distinct causes of action, as distinguished from separate CT Page 3590 and distinct claims for relief founded on the same cause of action or transaction, are joined, the statement of the second shall be prefaced by the words Second Count, and so on for the others; and the several paragraphs of each count shall be numbered separately beginning in each count with number one.
The plaintiff has combined what appears to be three causes of action in one count. In count two the plaintiff has incorporated a cause of action for intentional infliction of emotional distress, bystander emotional distress and loss of consortium arising out a parent-child relationship. The complaint should contain a separate count for each cause of action pursuant to Practice Book Sec. 138.
However, the court considers the substantive issues raised by the motion to strike despite this defect.
1. Loss of Filial Consortium
In his motion to strike the defendant argues that count two should be stricken because a parent does not have a cause of action for the loss of affection of a child. The defendant argues that the right to consortium arises only out of the civil contract of marriage, and does not extend to the parent-child relationship. The defendant further argues that because Connecticut has yet to allow recovery for loss of a child's companionship it would similarly deny a parents claim for loss of a possible grandparent relationship.
The plaintiffs argue that the cause of action is not for loss of consortium and therefore the defendant's argument as to that cause of actions is not applicable.
The defendant's motion to strike is granted with regards to the plaintiffs' cause of action for loss of consortium. The plaintiffs allege in paragraph fifteen of the second count that as the result of the defendant's sexual assault of her daughter, plaintiff Carboni "will never be able to experience natural grandmotherhood, and her future relationship are jeopardized." Carboni appears to be alleging a cause of action for loss of filial consortium. CT Page 3591
While the Connecticut Supreme Court recognizes a cause of action on behalf of a spouse for the loss of consortium of an injured marital partner; Hopson v. St. Mary's Hospital, 176 Conn. 485, 408 A.2d 260 (1979); it appears that most Connecticut courts have denied parents the right to recover for loss of consortium with their children. Mahoney v. Lensink, 17 Conn. App. 130, 550 A.2d 1088 (1988); Toscano v. Sinsteden, 8 Conn. L. Rptr. 465 (March 11, 1993, Wagner, J.); Reardon v. Middlesex Hospital, 7 Conn. L. Rptr. 299
(October 5, 1992, Hendel, J.); O'Hazo v. Sousa,7 Conn. L. Rptr. 62 (August 3, 1992, Langenbach); Michaud v. St. Mary's Hospital, 4 Conn. L. Rptr. 442 (August 21, 1991, Byrne, J.); Livingston v. Avery Center Obstetrics and Gynecology,1 Conn. L. Rptr. 464 (April 9, 1990, Meadow, J.); Shattuck v. Gulliver, 40 Conn. Sup. 95, 481 A.2d 1110 (Super.Ct., 1984, Pickett, J.). However, two Superior Courts have held that there is a cause of action for parent-child loss of consortium. Henderson v. Micciche, 6 Conn. L. Rptr. 317 (May 18, 1992, Murray, J.); Kizina v. Minier, 5 Conn. L. Rptr. 481
(February 17, 1991, Santos, J.).
Although the Appellate Court has not addressed the validity of a cause of action for loss of filial consortium, the Appellate Court has stated that "[t]he right to consortium is said to arise out of the civil contract of marriage and as such, does not extend to the parent-child relationship." Mahoney, supra, 141. To the extent that count two of the plaintiffs' complaint seeks to recover for the loss of "grandmotherhood" arising out of an injury to her relationship with her child, the court grants the motion to strike.
2. Intentional Infliction of Emotional Distress
The plaintiffs argue that they have alleged a cause of action for the intentional infliction of emotion distress. The plaintiffs argue that they have stated a cause of action for emotional distress because they have alleged that the defendants behavior was outrageous and his acts were reasonably calculated to cause serious mental and physical injury to Carboni. The plaintiffs argue that the defendant knew or should have known that his conduct, when brought to light, would cause Carboni emotional distress, and in fact did result in psychological and physical injury.
To the extent that count two is an action for the CT Page 3592 intentional infliction of emotional distress, the motion to strike is granted.
"In order for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Hiers v. Cohen, 31 Conn. Sup. 305, 329 A.2d 609 (1973); 1 Restatement (Second), Torts 46." DeLaurentis v. New Haven,220 Conn. 225, 266-67, 597 A.2d 807 (1991); quoting Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986); quoting Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 62,480 A.2d 610 (1984).
A claim of intentional infliction of emotional distress normally is based on conduct directed at the plaintiff and therefore may not be available as a remedy for the parent of a child who is sexually assaulted. Unless the plaintiff alleges that the child was assaulted for the specific purpose of tormenting her, there is no cause of action for intentional infliction of emotional distress. Marshak v. Marshak, 5 Conn. L. Rptr. 447, 452 (January 16, 1992, Blue, J.) The plaintiffs have failed to allege that the defendant sexually assaulted Hendrickson so as to torment Carboni. Therefore, the court grants the motion to strike count two of the plaintiffs' complaint on the ground that it does not state a cause of action for intentional infliction of emotional distress.
3. Bystander Emotional Distress
The plaintiffs argue in the alternative that count two is an action for bystander emotional distress. The plaintiffs argue that where the defendant directs extreme or outrageous conduct at a person, he is subject to liability if he intentionally or recklessly causes severe emotional distress to a member of that person's immediate family who is present at the time. The plaintiffs argue that the defendant's repeated sexual assaults upon Henrickson spanning over a period of twelve years were intentional, and that he should CT Page 3593 have realized that this conduct involved an unreasonable risk of causing emotional distress to Carboni. The plaintiffs argue that the defendant's conduct is sufficient to establish a cause of action for bystander liability.
The Supreme Court has addressed the issue of recovery for bystander emotional distress on three occasions; Strazza v. McKittrick, 146 Conn. 714, 156 A.2d 149 (1959); Amodio v. Cunningham, 182 Conn. 80, 438 A.2d 6 (1980), and Maloney v. Conroy, 208 Conn. 392, 545 A.2d 1059 (1988).
In Strazza, the court did not allow a mother to recover for emotional distress resulting from fear or injury to her child after a truck crashed into the porch on which the mother, who heard the crash from inside the home, had told the child to wait. The court found that the mother could not recover "for injuries occasioned by fear of threatened harm or injury to the person or property of another." Maloney, supra, 394-95.
In Amodio, the court addressed the issue of bystander emotional distress within the context of a medical malpractice action. The court considered the three-part test of a bystander emotional distress claim utilized in Dillon v. Legg, 68 Cal.2d 728, 441 P.2d 912 (1968). The three-part test articulated in Dillon required the plaintiff to establish that:
 1. The plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it;
 2. The plaintiff's shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence;
 3. The plaintiff and victim were closely related, as contrasted with an absence of relationship or presence of only a distant relationship.
Amodio, supra, 88-89. CT Page 3594
Although the court in Amodio stopped short of adopting the Dillon test, the court's decision implied that the total bar to bystander recovery stated in Strazza might be abandoned in a case that presented facts that satisfied the Dillon factors.
In Maloney, the court definitively stated that no bystander emotional distress claim is available in the medical malpractice context. While the court in Maloney did not indicate that there can be no recovery for bystander emotional distress under any factual pattern, it did recognize the necessity of imposing some rather arbitrary limitations on the right of a bystander to recover for emotional distress. The court stated:
 "It would be an entirely unreasonable burden on all human activities if the defendant who has endangered one person were to be compelled to pay the lacerated feelings every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends." . . . "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences like the rippling of waters, without end. The problem for the law is to limit legal consequences to a controllable degree . . . (Citations omitted.)
Maloney, supra, 400-01.
The California Supreme Court in Thing v. LaChusa,48 Cal.3d 644, 771 P.2d 814 (1989), provided such limitations by refining and restricting the scope of the Dillon test. The court in Thing stated that the elements of a bystander emotional distress claim are:
 1. The plaintiff must be closely related to the injury victim;
CT Page 3595
 2. The plaintiff must be present at the scene of the injury-producing event at the time it occurs and aware that it is causing injury to the victim;
 3. As a result, the plaintiff suffers serious emotional distress, a reaction beyond that which would be anticipated in a disinterested witness and which is not a normal response to the circumstances.
Id., 820. The Thing test has been adopted by several courts in Connecticut. Murphy v. Banziruk, 8 Conn. L. Rptr. 331
(February 8, 1993, Pickett, J.), Stoughton v. Sabolcik,5 Conn. L. Rptr. 502 (January 24, 1992, Pickett, J.), LeMoine v. Soboleski, 2 Conn. L. Rptr. 569 (October 4, 1990, O'Keefe, J.).
The plaintiffs have failed to allege in count two that Carboni was present when the defendant sexually assaulted her daughter. The plaintiffs allege in paragraph ten that Carboni only learned of the alleged sexual assaults in 1988 when Hendrickson informed Carboni that the defendant had sexually assaulted her during the periods from 1976 to 1982 and 1986 to 1988. Absent an allegation that Carboni was at the scene of the injury-producing event, the defendant's motion to strike the plaintiffs' cause of action for bystander emotional distress is granted.
Accordingly, count two is stricken in its entirety.
HIGGINS, J.