Thomas **CONSTANTINO, By His Next Best Friend Ralph CONSTANTINO, Ralph Constantino and Cynthia Constantino**

v.

**AVERY CENTER FOR OBSTETRICS AND GYNECOLOGY, P.C. and Marjorie Szeto, M.D.**

No. 3:96–cv–85 (WWE).

United States District Court, D. Connecticut.

Nov. 12, 1998.

Jeffrey Korek, Gersowitz, Libo & Korek, New York City, Frederic S. Ury, Brian E. Briones, Ury & Moskow, Westport, CT, for Thomas Constantino, Ralph Constantino, Cynthia Constantino.

Beverly J. Hunt, Daniel E. Ryan, III, Ryan, Ryan, Johnson, McCaghey & Deluca, Stamford, CT, for Norwalk Hospital.

Lisa M. Faris, McGrail, Carroll & Sheedy, New Haven, CT, Michael D. Neubert, Neubert, Pepe & Monteith, New Haven, CT, for Avery Center For Obstetrics & Gynecology, PC, Marjorie Szeto, MD.

### AMENDED RULING ON MOTION IN LIMINE REGARDING BYSTANDER EMOTIONAL DISTRESS

EGINTON, Senior District Judge.

### INTRODUCTION

Defendants have filed this Motion in Limine, asserting that plaintiff should be precluded from offering any evidence and/or submitting to the jury their claim for damages arising out of bystander emotional distress. Defendants assert that the Connecticut Supreme Court has declined to recognize a claim for "bystander emotional distress" within the context of a normal medical malpractice case.

## STATEMENT OF RELEVANT FACTS

The Court summarizes only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion.

This is a medical malpractice action, based on the alleged failure of Dr. Marjorie Szeto ("defendant" or "Szeto") to catch infant Thomas Constantino ("Thomas") as he was being born from his mother, Cynthia Constantino ("Mother"). The failure to catch Thomas resulted in him, in full view of his father Ralph Constantino ("Father"), falling and striking his head on a hard metal object. Thomas suffered trauma to his head, a head laceration and, resultingly, cerebral palsy, developmental delay, impairment of visual spatial perception, body awareness and bilateral coordination. The Second Count of plaintiffs' complaint seeks damages for the extreme emotional distress suffered by the Mother and the Father and for monies they will be forced to expend for the specialized medical, educational and living expenses for Thomas.

## LEGAL ANALYSIS

Defendants base their motion on the Supreme Court case of *Maloney v. Conroy*, 208 Conn. 392, 545 A.2d 1059 (1988), in which the Court held that a claim for bystander emotional distress was unavailable in the normal medical malpractice action. A more recent Connecticut Supreme Court decision, however, puts the viability of *Maloney* into question and, at the very least, confines the *Maloney* holding to the facts before it and similar cases.

In *Clohessy v. Bachelor*, 237 Conn. 31, 675 A.2d 852 (1996), the Court recognized a claim for bystander emotional distress within a tort claim, as long as four very stringent requirements were present.

■ The Connecticut Superior Courts have struggled with the seeming inconsistency. However, the vast majority are in complete accord with this Court in holding that a mother is most assuredly not a mere bystander at the birth of her child. "To suggest that a mother engaging in the process of labor and delivery is a bystander to the event, or to try and sever out concerns for her own well-being versus concerns for her child within her, defies logic and reason. [These concerns] are so interwoven as to be legally inseparable." *Golymbieski v. Equia*, 1997 WL 297111 at *1 (May 22, 1997). *Accord Smith v. Humes*, 1997 WL 435862 at *2 (July 28, 1997) (holding that mother is not a bystander at the birth of her child; collecting eighteen cases which stand for the identical proposition).

Since the Court holds that the Mother herein is not a bystander, she must allege and satisfy the conditions for recovery set out in *Montinieri v. Southern New England Telephone Company*, 175 Conn. 337, 345, 398 A.2d 1180 (1978): that the defendants knew or should have known that their conduct involved an unreasonable risk of causing emotional distress and that the distress, if caused, might result in illness or bodily harm.

■ The next inquiry is whether the Father should be considered to be a "bystander" under the facts of this case. In *Maloney*, the major concern was that "the etiology of emotional disturbance is usually not readily apparent as that of a broken bone following an automobile accident....". *Maloney*, 208 at 397, 545 A.2d 1059. The *Maloney* case concerned a grown daughter, who had lived with her mother the majority of her life, who, over the course of several days watched her elderly mother become more debilitated and finally die. She claimed medical malpractice for the physicians' treatment, or lack thereof, during that extended three day period. The *Maloney* Court rejected her claim, noting that the problem is compounded when the underlying act of negligence with respect to the victim is medical malpractice because there "generally is no significant observable sudden traumatic event by which the effect on the bystander can be judged." *Maloney*, 208 Conn. at 396, 545 A.2d 1059. *See also Amodio v. Cunningham*, 182 Conn. 80, 438 A.2d 6 (1980) (emotional distress not viable where mother had watched slow deterioration, and death, of her daughter). Both courts noted, under the facts of those cases, that it was not possible to separate the normal grieving process from the emotional dis-

**508**

tress resulting from the alleged medical malpractice.

In contradistinction, *Clohessy* first analyzed the concept of duty owed to a bystander, concerning itself with legal foreseeability and the fundamental policy of the law. It concluded that bystander emotional distress was indeed reasonably foreseeable. *Clohessy,* 237 Conn. at 46, 675 A.2d 852. Secondly, "[w]e further conclude that public policy requires that we recognize this duty owed by a tortfeasor to a bystander." *Id.* "The interest in personal emotional stability is worthy of legal protection against unreasonable conduct. The emotional harm following the perception of the death or serious injury to a loved one is just a foreseeable as the injury itself, for few persons travel life alone." *Clohessy,* 237 Conn. at 46–47, 675 A.2d 852, *quoting Portee v. Jaffee,* 84 N.J. 88, 101, 417 A.2d 521 (1980).

Accordingly, for a cause of action for bystander emotional distress, the *Clohessy* Court adopted the reasonable foreseeability rule subject to the following conditions: first, the bystander must be closely related to the injury victim;[1] second, the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or conduct that causes the injury; third, the injury to the victim must be substantial, resulting in either death or serious physical injury; and, fourth, the plaintiff bystander must have sustained a serious emotional injury—that is, "a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstance." *Clohessy,* 237 Conn. at 52–54, 675 A.2d 852.

The Father in this case meets the four *Clohessy* factors. He is Thomas' father, who contemporaneously watched his son being dropped to the floor of the delivery room, to his serious physical injury. Finally, the emotional distress suffered by Father after watching this horrific event is not an abnormal response. Accordingly, this Court will not preclude Father from admitting evidence as to his extreme emotional distress, pursuant to these factors as set forth.

---

1. The relationships recognized in *Clohessy* were parent and child and siblings.

*CONCLUSION*

For the reasons set forth herein, defendants' *Motion in Limine* [Doc. No. 28] is DENIED.

SO ORDERED