The defendant, Travelers Propery Casualty Corp. ("Travelers") and the defendant University of Hartford ("University"), have moved to strike the third and fifth counts, respectively, of the plaintiff's third amended complaint for failure to state a claim upon which relief may be granted. On August 29, 1999 oral argument was held. The motions to strike are granted.
In deciding any motion to strike, the court assumes the truth of the pleading under attack, Ivey, Barnum O'Mara v. IndianHarbor Properties, Inc., 190 Conn. 528, 530 (1983). Additionally the court construes the facts alleged in a light most favorable to the pleader. Sheets v. Teddy Frosted Foods, Inc.,179 Conn. 471, 472 (1980).
The plaintiff's third amended complaint sets forth the following facts. The plaintiff is an electrical contractor who engages in the installation and repair of electrical systems for commercial buildings. The plaintiff contracted with the defendant general contractor, Thibodeau General Contractors. Inc. ("Thibodeau") to provide service for work necessary for the renovation and repair of a building owned by the defendant CT Page 13319 University on the campus at the Hartt School of Music. The repairs were needed as a result of a fire that had occurred on April 23, 1997. The plaintiff agreed to provide services pursuant to an agreement with Thibodeau dated September 1, 1997. The plaintiff rendered services between September 1, 1997 and February 13, 1998. The plaintiff invoiced Thibodeau on December 21, 1997 and February 13, 1998. Thibodeau has failed to pay either invoice and there remains outstanding $29,940.00.
Travelers provided a policy of insurance to the University covering the fire loss. Travelers issued checks payable to Thibodeau and the University to pay for the loss "in accordance with the invoices submitted by the subcontractors, including the plaintiff." Count Three, Third Amended Complaint, Paragraph 14. The plaintiff further alleges that Thibodeau did not in turn make full payment to the plaintiff and retained a large portion of the funds for his own purposes.
The plaintiff claims that the defendants were negligent in failing to determine whether the plaintiff had been paid for the goods and services supplied and in failing to obtain lien waivers from the subcontractors before issuing checks to the general contractor, Thibodeau.
 1. Travelers' Motion to Strike
The sole issue raised by the defendants' motions to strike is whether the defendants owed a duty of care to the plaintiff. "A duty of care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." Coburn v. Lenox Homes, Inc., 186 Conn. 370,375 (1982). It is undisputed that the plaintiff and Travelers had no contractual relationship and that there exists no statutory obligation on Travelers to protect the plaintiff's interests. Thus the first question to be determined by the court is whether harm of the same general nature that the plaintiff suffered was forseeable or likely to result from either Travelers' actions or its failure to act.[1]
Whether or not harm of the same general nature as suffered by the plaintiff is forseeable is a question of whether or not that harm should have reasonably been anticipated by Travelers. The plaintiff argues that courts are burdened by claims of CT Page 13320 subcontractors who have not been paid by the general contractor and thus this harm or the potential for this harm is forseeable. The question of forseeability cannot be answered by asking the question "was the harm possible?" Rather the concept of forseeability is whether the harm that is occasioned should have been reasonably anticipated. The defendant Travelers had a contractual obligation to the defendant University. It has obligations to pay in accordance with the policy terms. No relationship existed between the defendant and the plaintiff. When making its payment under the policy it issued a joint check to its policy holder and to the general contractor. The Travelers could reasonably expect that Thibodeau would pay the subcontractors or, alternatively, that any unpaid subcontractor would avail itself of its statutory right to a mechanics lien. Under any reasonable limits on the concept of foreseeability, it cannot be said that the harm to the subcontractor was one that could have been reasonably anticipated by Travelers. This is particularly true in light of the lack of any relationship between the plaintiff and this defendant.
However, assuming the harm was forseeable, that alone does not "mandate a determination that a duty exists. Many harms are foreseeable yet for pragmatic reasons, no recovery is allowed."R.K. Contractors, Inc. v. Fusco Corporation, 231 Conn. 381, 386
(1994), citing Maloney v. Conroy, 208 Conn. 392, 400-01, (1988). The court must, on issues such as these, make a determination of "the fundamental policy of the law, as to whether the defendant's responsibility should be extended to such results." Id., 386, citing W. Prosser and W. Keetan, Torts (5th Ed. 1984) § 43, p. 281. In making this determination the court considers a variety of factors including any statutory protections that the subcontractor is afforded, the burden that would be placed upon the defendant if a duty were found to exist, the practices of the industries which are involved in the dispute, and the relationship between the defendant's conduct and the consequences to and the identity of the plaintiff. Weighing all of these factors the court finds that the losses occasioned by the plaintiff are too remote from the conduct of the defendant Travelers to find, as a matter of policy, that a duty exists.
 2. University of Hartford's Motion to Strike
The University in its motion to strike similarly attacks the plaintiff's claim that the University owed a duty of care to the plaintiff-subcontractor. Certainly the relationship between the CT Page 13321 University and the plaintiff is less tenuous than that of the insurer of the University and the subcontractor and from that perspective it can be argued that the alleged harm occasioned by the University's failing to obtain lien waivers is more foreseeable. However, even if the plaintiff's claim is found to be foreseeable, it still must fail as it cannot satisfy the second prong of the test set forth in the R.K. Contractors, Inc.
The court must determine "the fundamental policy of the law, as to whether the defendant's responsibility should be extended to such results" Id. 386. citing W. Prosser and W. Keetan, Torts (5th Ed. 1984), § 43, p, 281. The mechanics lien statutes are structured in such a way as to afford protection for both the owner and the subcontractor. The purpose of the notice provisions in the mechanics lien statutes is to inform the owner to withhold payment to the contractor. Thames Lumber Co. v. Cruise,116 Conn. 273, 276 (1933). Nowhere in the complaint is it alleged that notice was given and disregarded by the University. The sole claim by the plaintiff is that the defendant was negligent in failing to obtain the lien waivers or otherwise determining whether the subcontractors has been paid. The potential effect of finding that a duty exists to obtain lien waivers, in the situation presented is that the University is exposed to paying for the same work twice. This would be a particularly incongruous result if one considers that the plaintiff, despite not complying with the notice requirements of the mechanic's lien statutes, is allowed to recover against the University for not obtaining lien waivers that would have been necessitated if the plaintiff had complied with the statute. The right to a lien on the owner's property is not one that existed at common law but is a creation of the legislature and embodied in the mechanic's lien statutes.[2] Thus the need to obtain lien waivers is necessitated by the lien rights created by the statute. Those same statutes require the subcontractor to give notice of his claim to the owner. The plaintiff seeks to alter the statutory scheme by substituting an affirmative duty on the defendant to determine whether a subcontractor has been paid in lieu of the plaintiff's statutory obligation to give notice of his intent to claim a lien.
Taking into consideration the long standing practices of the construction industry, the lack of any direct relationship between the owner and subcontractor, the burden that would be placed upon owners to obtain payment information from those subcontractor's who have not given notice, and the statutory remedies, available to the subcontractor, as a matter or policy, CT Page 13322 the court finds no duty on the owner to protect the subcontractor from the harm alleged.
Therefore both motions to strike the third and fifth counts of the plaintiff's third amended compliant are granted.