[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendants, Thomas Ward, M.D. and Bristol Pediatric Center, have moved to strike the Fifth, Sixth, Eleventh, Twelfth, and Thirteenth through Twentieth Counts of the Plaintiffs' Third Amended Complaint dated February 15, 2001 on the grounds that those counts fail to state a CT Page 5954 legally cognizable claim upon which relief could be granted.
Allegations of the Complaint
The complaint alleges that during the circumcision of Jonathan Clark, his penis was injured. A companion case arising out of substantially the same facts was brought against New Britain General Hospital.
The third amended complaint contains twenty counts. The first through fourth counts allege medical malpractice against Dr. Ward and Bristol Pediatric Center by Jonathan Clark for physical and by his father for incurring medical expenses on Jonathan Clark's behalf. The Fifth and Six Counts allege recklessness based upon the same facts as the First Count against Dr. Ward and Bristol Pediatric Center. The Seventh and Eighth Counts allege assault and battery arising out of the same facts as the First Count. The Ninth and Tenth Counts allege lack of informed consent. The Eleventh and Twelfth Counts allege negligent misrepresentation.
The Thirteenth through Twentieth Counts are all brought by the parents of Jonathan Clark in their individual capacities. The Thirteenth, Fourteenth, Seventeenth and Eighteenth Counts all allege "entrustment-negligent infliction of emotional distress." The Fifteenth, Sixteenth, Nineteenth and Twentieth Counts allege "assault and battery-negligent infliction of emotional distress." In essence, these counts allege that the mother and father of Jonathan Clark suffered emotional distress due to the alleged injury to their son. These counts do not allege that the parents were present during the circumcision nor do they allege that they were within any physical proximity to their son when the alleged injury occurred.
Discussion of the Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz,12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those CT Page 5955 necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
The Fifth and Sixth Counts are characterized by the Plaintiffs as claims of recklessness against the defendants. However, the specific allegations and facts upon which these counts are based are virtually identical to the allegations and facts as the first four counts which allege negligence. The basic difference between the "negligence" counts and the "reckless" counts is that the word "reckless" has been inserted for the word "negligence."
"While [the Connecticut Supreme Court has] attempted to draw definitional distinctions between the terms willful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that `willful,' `wanton' or `reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . ." Dubay v. Irish, 207 Conn. 518, 533, 542 A.2d 711
(1988) (citations omitted).
"There is a wide difference between negligence and reckless disregard of the rights or safety of others, and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on." Dumond v. Denehy, 145 Conn. 88, 91,139 A.2d 58 (1958). "Recklessness is a state of consciousness with reference to the consequences of one s acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precaution to avoid injury to them." (Internal citation omitted). Dubay,supra, at 532.
In the case at bar, the plaintiffs' allegations in the Fifth and Sixth Counts are clearly limited to facts consistent with ordinary negligence. The plaintiffs attempt to transform a negligence claim into a recklessness claim by the insertion of the word "reckless." A brief reference to recklessness in a count which clearly sounds in negligence is insufficient to raise a claim of reckless or wanton misconduct.Kostiuk v. Queally, 159 Conn. 91, 94, 267 A.2d 452 (1970).
The plaintiffs' allegations are insufficient to sustain a claim of recklessness, as they sound essentially in negligence. Therefore, the Motion to Strike the Fifth and Sixth Count is granted. CT Page 5956
The Eleventh and Twelfth Counts are characterized by the plaintiffs as counts of negligent misrepresentation. The misrepresentation alleged in these counts is that the defendant, Thomas G Ward, represented to the parents of the minor plaintiff that he was qualified to perform a circumcision on their son, Eleventh Count ¶ 20, when he actually was not so qualified, ¶ 34. The plaintiffs again attempt to cast their malpractice claim in another form. However, they really allege nothing more than they have alleged in the First Count, that Dr. Ward failed to conform to the prevailing, standard of care when he performed the circumcision.
In Haynes v. Yale-new Haven Hospital, 243 Conn. 17, 699 A.2d 964
(1997), the Court upheld a summary judgment granted in favor of the defendant hospital on a Connecticut Unfair Trade Practice Act ("CUTPA") Count in a complaint for medical malpractice. In Haynes the plaintiff alleged that Yale-New Haven Hospital was certified as a major trauma center and held itself out as such, but failed to staff the emergency department adequately, and that it failed to train and support adequately its existing staff to meet the applicable standards for a major trauma center. In other words, the plaintiff alleged that the hospital essentially misrepresented its efficacy as a major trauma center, much as the plaintiffs in this case allege that Dr. Ward misrepresented his ability to perform circumcisions. The Court stated:
 By holding itself out as a major trauma center, however, it was representing to the public that it would meet the applicable standards of competency for a major trauma center. We conclude that this representation is simply what all physicians and health care providers represent to the public — that they are licensed and impliedly that they will meet the applicable standards of care. If they fail to meet the standard of care and harm results, the remedy is not one based upon CUTPA, but upon malpractice.
243 Conn at 39.
In Counts Eleven and Twelve the plaintiffs allege nothing more than Dr. Ward represented that he would meet the applicable standards of competency for a physician performing circumcisions, and he failed to do so. The remedy is not based upon misrepresentation, but upon malpractice. Moreover, since the plaintiffs would need the testimony of an expert witness in order to prove the "misrepresentation" alleged in these Counts, their presence in the Complaint does nothing more than lengthen it. Counts Eleven and Twelve are ordered stricken. CT Page 5957
The allegations in Counts Thirteen through Twenty are made by the parents of Jonathan Clark in their individual capacities. In essence, these counts allege that the parents suffered emotional distress due to the physical injury their son is alleged to have sustained.
The allegations in the Complaint set out a claim that the parents of Jonathan Clark suffered emotional distress from the alleged medical malpractice of Dr. Ward directed toward their son. Although the parents did not witness the alleged acts and were not present when the alleged acts occurred, these claims may be seen to be claims of emotional distress suffered by a "bystander".
The Connecticut Supreme Court held that there is no cause of action for bystander emotional distress in medical malpractice actions. Maloney v.Conroy, 208 Conn. 392, 393, 545 A.2d 1059 (1988). In Maloney, one of the plaintiffs brought suit for emotional distress as a result of watching her mother suffer from the effects of alleged medical malpractice. The Court stated " . . . a bystander to medical malpractice may not recover for emotional distress." Id. at 393. In the case at bar, the parents are alleging emotional distress of the precise type not allowed in Maloney.
The allegations of Count Thirteen through Twenty also fail to stated a cause of action for bystander emotional distress as recognized inClohessy v. Bachelor, 237 Conn. 31, 675 A.2d 852 (1996) where the Court held that in cases alleging bystander emotional distress, certain necessary elements must be pled.
 "[A] bystander may recover damages for emotional distress under the rule of reasonable forseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injured victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response."
237 Conn. at 56 (1996). CT Page 5958
In Counts Thirteen through Twenty the plaintiff parents fail to meet the standard enunciated in Clohessy. They have not pled a "contemporaneous sensory perception" of the alleged event, nor that they arrived on the scene soon after the event before a substantial change in condition or location occurred. Further, they have not pled that the physical injury resulted in their son's death or was otherwise serious. Finally, the plaintiff parents have not pled the emotional distress was severe and debilitating. For the foregoing reasons, Counts Thirteen through Twenty are ordered stricken,
By the court,
Aurigemma, J.