JEANNE AMODIO, ADMINISTRATRIX (ESTATE OF JENNIFER AMODIO) *v.* PETER R. CUNNINGHAM ET AL.

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued June 3—decision released August 12, 1980

*Joseph D. Garrison,* with whom was *Janet B. Arterton,* for the appellant (plaintiff).

*Arnold J. Bai,* with whom were *Karen L. Karpie* and, on the brief, *Stephen P. Sztaba,* for the appellees (defendants).

COTTER, C. J. In this action the plaintiff, individually and as administratrix of the estate of her daughter, seeks to recover damages from the defendant physicians for alleged negligence which she claims resulted in the death of her minor daughter. The second count of the complaint[1] as amended

[1] In the first count of the amended complaint the plaintiff, as administratrix of her daughter's estate, alleges a cause of action seeking 3.5 million dollars in damages for the wrongful death of her daughter. That cause of action is not presently before this court in this appeal.

alleges a cause of action on behalf of the plaintiff in her individual capacity for physical, mental and emotional harm caused by witnessing the death of her daughter which was alleged to be the result of the defendants' malpractice. The facts upon which the plaintiff relies under this count in seeking a recovery individually allege that she witnessed the deterioration of her daughter's health and the momentary stopping of her daughter's heart while being administered mouth-to-mouth resuscitation by the plaintiff, and that she participated in the decision to discontinue extraordinary life-support methods. The defendants' motion to strike the second count of the amended complaint on the ground that it failed to state a cause of action which is cognizable in this state was granted by the trial court. The court rendered judgment in favor of the defendants as to that count from which the plaintiff appeals.

The plaintiff urges this court to "adopt a simple negligence analysis, predicated on foreseeability" in this appeal and to abrogate the rule expressed in *Strazza* v. *McKittrick*, 146 Conn. 714, 719, 156 A.2d 149, that "[e]ven where a plaintiff has suffered physical injury . . . there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another."

Where an appeal is taken from a judgment following the granting of a motion to strike, we take the facts to be those alleged in the amended complaint construed in a manner most favorable to the pleader. *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 472, 427 A.2d 385; *Stradmore Development Corporation* v. *Commissioners*, 164 Conn. 548, 550–51, 324 A.2d 919; *Senior* v. *Hope*,

156 Conn. 92, 97, 239 A.2d 486; *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 557, 227 A.2d 418. For purposes of appeal, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. *DeMello* v. *Plainville,* 170 Conn. 675, 677, 368 A.2d 71; *McAnerney* v. *McAnerney,* 165 Conn. 277, 282, 334 A.2d 437. See Practice Book, 1978, § 151. The following facts are alleged in the amended complaint: On or about April 21, 1975, the plaintiff's daughter, Jennifer, who was a patient of the defendants, Dr. Peter R. Cunningham and Dr. Alan C. Mermann, began to wheeze heavily and had difficulty breathing. On or about that same day, the plaintiff contacted Mermann and requested that he see Jennifer because of her respiratory problems. Mermann did not examine Jennifer but did renew a previous prescription of penicillin and Nova-Histine. Jennifer's condition worsened during the following week causing the plaintiff to take her to the defendants' office on or about Sunday, April 27, 1975, where she was examined by Cunningham and allowed to return home. In the early morning hours of April 28, 1975, Jennifer began gasping for breath and her heart stopped momentarily while her mother was administering mouth-to-mouth resuscitation. Jennifer was rushed to the hospital where she died two days later after extraordinary life-support methods were discontinued. The complaint alleges that the defendants were negligent[2] in failing to properly diagnose and treat Jennifer's

---

[2] In particular, the second count of the amended complaint alleges that the defendants were negligent in the following respects: "(a) In failing to take a chest x-ray at any time mentioned herein; (b) In failing to see or feel a mass of tissue in Jennifer's neck in the examination of April 27; (c) In failing to consider adequately the family history at all times mentioned herein; (d) In failing to

disease and that such negligence was the proximate cause of her death and of the plaintiff's emotional distress. The sole issue in the present appeal, which is confined to the second count, is whether the plaintiff, suing in her individual capacity, has satisfied her burden of alleging sufficient facts to establish a cognizable cause of action.

There is a divergence of opinion among the jurisdictions[3] regarding the recognition of a cause of action for emotional distress to a bystander arising from witnessing the negligently inflicted injury of another.[4] Until very recently, the prevailing rule had been to deny such recovery. See generally annot., "Right to Recover Damages in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at Witnessing Such Injury," 29 A.L.R.3d 1337. This view is based on the consideration that the emotional injuries suffered by the plaintiff as a witness to the tortfeasor's negligence are too

become alerted by Jennifer's substantial weight loss at all times mentioned herein; (e) In failing to diagnose the reason for Jennifer's slow response to her medication at all times mentioned herein; (f) In failing to personally examine Jennifer and diagnose and properly treat Jennifer's actual disease."

[3] Compare *Dillon* v. *Legg,* 68 Cal.2d 728, 441 P.2d 912; *Dziokonski* v. *Babineau,* 375 Mass. 555, 380 N.E.2d 1295; *Sinn* v. *Burd,* 486 Pa. 146, 404 A.2d 672; *D'Ambra* v. *United States,* 114 R.I. 643, 338 A.2d 524; with *Tobin* v. *Grossman,* 24 N.Y.2d 609, 249 N.E.2d 419; *Whetham* v. *Bismarck Hospital,* 197 N.W.2d 678 (N.D.); *Guilmette* v. *Alexander,* 128 Vt. 116, 259 A.2d 12; *Waube* v. *Warrington,* 216 Wis. 603, 258 N.W. 497.

[4] In circumstances not involving recovery for emotional injuries suffered by a "bystander" to the negligence of a tortfeasor, this court has held that recovery for unintentionally-caused emotional distress is a cognizable cause of action which "does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180. See generally Brandfon, "Emotional Distress and Bystander Recovery," 53 Conn. B. J. 231 (1979).

remote from the defendant's negligent act or that no duty is owed to the plaintiff to prevent the shock or distress that comes from witnessing that act. See *Strazza* v. *McKittrick,* 146 Conn. 714, 156 A.2d 149; *Tobin* v. *Grossman,* 24 N.Y.2d 609, 249 N.E.2d 419; *Waube* v. *Warrington,* 216 Wis. 603, 258 N.W. 497.[5] The rationale underlying the denial of recovery to a bystander for negligently inflicted emotional harm was articulated in *Tobin* v. *Grossman,* supra, where the New York Court of Appeals held that a cause of action does not lie for emotional injury sustained by a plaintiff solely as a result of injuries negligently inflicted directly upon another regardless of the relationship of the parties or the fact that the plaintiff was an eyewitness to the negligent act. In *Tobin,* the plaintiff mother sought recovery for emotional distress which she suffered when her two-year-old son was struck by an automobile negligently operated by the defendant. The plaintiff was inside a neighbor's home when the accident occurred and did not witness the accident. The plaintiff, however, heard the screech of brakes, noted the absence of her child and immediately went outside and saw her child lying injured on the ground. The issue, as framed by the court, was whether to create a new legal duty and there-

[5] See also *Tyler* v. *Brown-Service Funeral Home Co.,* 250 Ala. 295, 34 So. 2d 203; *Slovensky* v. *Birmingham News Co.,* 358 So. 2d 474 (Ala. Civ. App.); *Woodman* v. *Dever,* 367 So. 2d 1061 (Fla. App.); *Southern Ry. Co.* v. *Jackson,* 146 Ga. 243, 91 S.E. 28; *Cotton States Mutual Ins. Co.* v. *Crosby,* 149 Ga. App. 450, 254 S.E.2d 485; *Hayward* v. *Yost,* 72 Idaho 415, 242 P.2d 971; *Brinkman* v. *St. Landry Cotton Oil Co.,* 118 La. 835, 43 So. 458; *Steele* v. *St. Paul's Fire & Marine Ins. Co.,* 371 So. 2d 843 (La. App.), writ denied, 374 So. 2d 658; *Resavage* v. *Davies,* 199 Md. 479, 86 A.2d 879; *Aragon* v. *Speelman,* 83 N.M. 285, 491 P.2d 173; *Whetham* v. *Bismarck Hospital,* 197 N.W.2d 678 (N.D.); *Van Hoy* v. *Oklahoma Coca-Cola Bottling Co.,* 205 Okla. 135, 235 P.2d 948; *Guilmette* v. *Alexander,* 128 Vt. 116, 259 A.2d 12.

fore a new cause of action. Noting that there were "no new technological, economic, or social developments which have changed social and economic relationships," the court stated that a "radical change in policy" was required before the cause of action urged by the plaintiff would be recognized. Id., 615.

The primary consideration militating against adoption of the cause of action urged by the plaintiff in *Tobin* was the inability to place reasonable limitations on the scope of the tortfeasor's liability; such liability would therefore become unduly burdensome.[6] Basing the existence of a cause of action solely on the foreseeability of harm to the plaintiff, the court in *Tobin* believed, would not resolve the problem. "If foreseeability be the sole test, then once liability is extended the logic of the principle would not and could not remain confined. It would extend to older children, fathers, grandparents, relatives, or others *in loco parentis*, and even any other affected bystanders. Moreover, in any one accident, there might well be more than one person indirectly but seriously affected by the shock of injury or death to the child." Id., 616. Similarly, a rule requiring that the plaintiff witness the accident, it was decided, would not provide the desired limitation. As the court stated: "Any rule based solely on eyewitnessing the accident could stand only until

---

[6] The likelihood that recognition of the plaintiff's cause of action would result in an increase of fraudulent claims or an undue burden on the judicial system caused by the proliferation of claims as justifications for denying recovery for an otherwise cognizable claim was rejected by the court in *Tobin* v. *Grossman,* 24 N.Y.2d 609, 249 N.E.2d 419. This court has similarly stated that "it is a very questionable position for a court to take, that because of the possibility of encouraging fictitious claims compensation should be denied those who have actually suffered serious injury through the negligence of another." *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 239, 21 A.2d 402.

the first case comes along in which the parent is in the immediate vicinity but did not see the accident. Moreover, the instant advice that ones' child has been killed or injured by telephone, word of mouth, or by whatever means, even if delayed, will have in most cases the same impact. The sight of gore and exposed bones is not necessary to provide special impact on a parent." Id., 617. The court also noted that, assuming there are cogent reasons for extending liability in favor of victims of shock, there appears to be no rational way to limit the scope of liability except by establishing arbitrary distinctions. Id., 618. See Prosser, Torts (4th Ed.) § 54, pp. 334–35.

A growing number of jurisdictions, beginning in 1968 with the California decision in *Dillon* v. *Legg,* 68 Cal.2d 728, 441 P.2d 912, have recently recognized a cause of action for emotional distress in favor of a bystander to the negligently caused injury of another party.[7] In *Dillon,* a minor child was killed when she was struck by an automobile negligently operated by the defendant. The complaint alleged, inter alia, a cause of action for physical and mental pain and suffering inflicted upon the victim's mother and sister both of whom witnessed the accident. The trial court rendered judgment on the pleadings in favor of the defendant as to the mother's cause of action and denied the defendant's motion for judgment on the pleadings as to the sister's count on the grounds that the mother was not in the zone

---

[7] See also *Keck* v. *Johnson,* 122 Ariz. 114, 593 P.2d 668; *Leong* v. *Takasaki,* 55 Haw. 398, 520 P.2d 758; *Dziokonski* v. *Babineau,* 375 Mass. 555, 380 N.E.2d 1295; *Corso* v. *Merrill,* 119 N.H. 647, 406 A.2d 300; *Sinn* v. *Burd,* 486 Pa. 146, 404 A.2d 672; *D'Ambra* v. *United States,* 114 R.I. 643, 338 A.2d 524; *Hunsley* v. *Giard,* 87 Wash. 2d 424, 553 P.2d 1096.

of danger from the defendant's negligence whereas the sister may have been within that zone. A divided court (four to three) held that the cause of action alleged by the plaintiff mother was cognizable.

The central issue facing the court in *Dillon* was whether to recognize a duty of care owed by the defendant to the plaintiff mother. In the court's view, the issue was essentially to determine whether the risk of emotional harm to the plaintiff was reasonably foreseeable in the particular factual setting of the case.[8] Recognizing the need "to limit the otherwise potential infinite liability which would follow every negligent act"; id., 739; the court enunciated three factors which, when considered in light of the facts of a particular case, determine whether the injury to the plaintiff was reasonably foreseeable and thereby gives rise to a duty of care owed by the defendant: "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it, (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence, (3) Whether plaintiff and the victim were closely related, as contrasted with an

---

[8] The court adopted the view expressed in 2 Harper & James, Torts, p. 1018, that the existence of a legal duty depends on whether "the offending conduct foreseeably involved unreasonably great risk of harm to the interests of someone other than the actor . . . [t]he obligation to refrain from . . . particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to these risks or hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails." (Footnotes omitted.)

absence of any relationship or the presence of only a distant relationship." Id., 740–41. In *Dillon,* the appellate court found that all of those factors were pleaded in the plaintiff mother's complaint which hence alleged a prima facie cause of action. It is obvious that *Dillon* adopts a rule which is not uniform in application and "contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected." Id., 741.

The plaintiff urges the adoption of the rule expressed in *Dillon* v. *Legg,* supra, which she claims would permit the cause of action for malpractice alleged in her complaint. An examination of the cases following *Dillon* indicates, however, that recognition of the alleged cause of action would require an extension of *Dillon* which even the California Supreme Court has refused to allow.

In *Dillon* recovery was permitted because the shock to the plaintiff resulted from a direct emotional impact upon her from the "sensory and contemporaneous observance of the accident." Subsequently in 1977, in *Krouse* v. *Graham,* 19 Cal. 3d 59, 562 P.2d 1022, the court recognized that the requirement of "sensory and contemporaneous observance" does not require a visual perception of the impact[9] although it does require that the plain-

---

[9] In *Krouse* v. *Graham,* 19 Cal. 3d 59, 562 P.2d 1022, the court cited with approval *Archibald* v. *Braverman,* 275 Cal. App. 2d 253, 79 Cal. Rptr. 723, in which a mother who did not visually witness the accident in which her child was seriously injured was nonetheless permitted recovery for emotional distress where she arrived at the scene "within moments" of the accident and saw his bleeding and maimed body.

tiff bystander otherwise apprehend the event. In *Krouse,* the plaintiff husband was sitting in his parked car and his wife was standing on the curb when the defendant's car, approaching from the rear, straddled the curb and struck and killed the plaintiff's wife before colliding with his car. Although the plaintiff did not actually see the defendant's car strike his wife, he was nonetheless allowed recovery for emotional injuries arising from the injury to his wife inasmuch as "he fully perceived the fact that she had been so struck, for he knew her position an instant before the impact, observed the defendant's vehicle approach her at high speed on a collision course, and realized that the defendant's car must have struck her. Clearly, under such circumstances [the plaintiff husband] must be deemed a percipient witness to the impact causing [his wife's] catastrophic injuries." Id., 76. See also *Corso* v. *Merrill,* 119 N.H. 647, 406 A.2d 300. Merely observing the consequences of the defendant's negligence towards another person without perceiving the actual negligent behavior, however, is insufficient to maintain a cause of action for emotional distress to a bystander.[10] In 1977, in *Justus* v. *Atchison,* 19 Cal. 3d 564, 565 P.2d 122, for example, the court, in reaffirming the principles underlying *Dillon* and reemphasizing the need to limit potentially infinite liability, denied recovery for emotional distress to the plaintiff hus-

---

[10] See *Arauz* v. *Gerhardt,* 68 Cal. App. 3d 937, 137 Cal. Rptr. 619 (no cause of action alleged by a mother who did not witness the accident in which her child was injured and hence had no sensory perception of the event) ; *Hair* v. *County of Monterey,* 45 Cal. App. 3d 538, 119 Cal. Rptr. 639 (mother was denied recovery for emotional distress resulting from the injuries to her child allegedly caused by the negligence of the defendant during surgery on the child where the mother was in the hospital waiting room during the surgery and therefore did not witness the negligent conduct) ; *Powers* v. *Sissoev,*

band who was present in the hospital delivery room when, during the delivery, he witnessed the prolapsing of the umbilical cord and heard the attending physician announce that the fetus had died. The court stated that "although the plaintiff was in attendance at the death of the fetus, that event was by its very nature hidden from his contemporaneous perception. . . . To put it another way, he had been admitted to the theater but the drama was being played on a different stage." Id., 584. See also *Hoyem* v. *Manhattan Beach City School Dist.,* 22 Cal. 3d 508, 585 P.2d 851. Other jurisdictions in which the *Dillon* approach has been adopted are in accord that in order to allege a cognizable cause of action the plaintiff bystander must have had contemporaneous sensory perception of the negligent conduct of the defendant. See, e.g., *Leong* v. *Takasaki,* 55 Haw. 398, 520 P.2d 758; *Corso* v. *Merrill,* supra; *Sinn* v. *Burd,* 486 Pa. 146, 404 A.2d 672; *Caparco* v. *Lambert,* 121 R.I. 710, 402 A.2d 1180 (recovery denied because the mother only witnessed the daughter's resultant injuries and not the accident). Cf. *Shelton* v. *Russell Pipe & Foundry Co.,* 570 S.W.2d 861 (Tenn.).

In addition to the requirement that the plaintiff bystander perceive the negligent act, it appears that recovery for emotional distress resulting from injury inflicted upon another is also restricted to situations where the injury to the third party is

39 Cal. App. 3d 865, 114 Cal. Rptr. 868 (no cause of action alleged by mother who did not see her injured child until thirty to sixty minutes after the accident); *Deboe* v. *Horn,* 16 Cal. App. 3d 221, 94 Cal. Rptr. 77 (no cause of action alleged by wife who was not present at the accident and first observed her husband's condition later at the hospital). The preceding four cases were all cited approvingly by the California Supreme Court in *Justus* v. *Atchison,* 19 Cal. 3d 564, 565 P.2d 122.

manifest contemporaneously with the negligent act. In *Jansen* v. *Children's Hospital Medical Center,* 31 Cal. App. 3d 22, 106 Cal. Rptr. 883, the mother of a five-year-old child alleged a cause of action for physical and emotional trauma caused by witnessing the progressive deterioration and ultimate death of her daughter which occurred in the hospital allegedly due to the negligence of the hospital and its staff in failing to diagnose the child's ailment. In refusing to extend the principles enunciated in *Dillon,* the court held that recovery by the plaintiff mother was precluded because there was no sudden and brief event which proximately caused the child's injury and which could be the subject of sensory perception by the mother. In *Mobaldi* v. *Board of Regents of University of California,* 55 Cal. App. 3d 573, 127 Cal. Rptr. 720, however, the plaintiff foster mother was found to be a percipient witness to the injury inflicted upon her foster son where, while she was holding the child in her arms, he became convulsive and comatose from an improper intravenous solution negligently being administered to him by the defendant doctors. Both of these cases, which were cited approvingly by the California Supreme Court in *Justus* v. *Atchison,* supra, construe *Dillon* as imposing a policy limitation upon the liability for emotional distress suffered by a witness to alleged negligence by requiring that the plaintiff observe a negligent act contemporaneously causing injury to the third party.

It is clear from the preceding discussion that even were we inclined to adopt the approach taken in *Dillon* and the cases relying thereon, the complaint in the present case would nonetheless fail to state a cognizable cause of action. Without determining whether in fact an alleged negligent diagnosis is

susceptible to sensory perception, we note that the allegations of the complaint indicate that the injuries suffered by the plaintiff's child became manifest a considerable period of time after the alleged negligence of the defendants occurred. We do not intend to minimize the injury suffered by the plaintiff; but, the result reached in this case is a recognition[11] that liability for negligent behavior cannot be so burdensome as to transcend a reasonable degree of culpability.

There is no error.

In this opinion the other judges concurred.

---

[11] Dean Prosser, although a proponent of the recognition of a cause of action for emotional distress suffered by a bystander, in suggesting certain limitations on that cause of action recognizes that "[a]dmittedly such restrictions are quite arbitrary, have no reason in themselves, and would be imposed only in order to draw a line somewhere short of undue liability; but they may be necessary in order not to 'leave the liability of a negligent defendant open to undue extension by the verdict of sympathetic juries, who under our system must define and apply any general rule to the facts of the case before them.'" (Footnote omitted.) Prosser, Torts (4th Ed.) § 54, p. 335.