[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ONDEFENDANT'S MOTION TO STRIKE
A motion to strike has been filed against the third count CT Page 13196 (private nuisance), fourth count (res ipsa loquitur), sixth count (breach of enforceable contract), ninth count (indemnification).
The fourth count is being withdrawn. The defendant withdraws its motion as to the ninth count.
This suit arises out of the actions of the defendant in demolishing a building. The revised complaint states that the defendants were operating a hydraulic excavator to dismantle a portion of a building on July 3, 1995. At that time the building collapsed. The building collapsed as a result of the operation of the hydraulic excavator which was being operated by one of the defendants. The complaint further alleges that the defendants did not have permission to commence demolition work and were not authorized to do so until a written agreement to do so was entered into. The defendants were allowed to stay about the property but not otherwise given permission to perform demolition work. See paragraphs 16-25 of first count which are incorporated into the third count and the sixth count.
The motion to strike is now directed at the third count and the sixth count.
The rules governing a motion to strike are well known. The pleadings must be given that reading that is most favorable to the nonmoving party, Amodio v. Cunningham, 182 Conn. 80, 82
(1980). On the other hand since the function of such a motion is to test the legal sufficiency of pleadings and this is a fact pleading state a motion to strike cannot be defeated by pleading language that is completely conclusory. A motion to strike admits, like a common law demurrer, only well pleaded allegations and conclusions of law, opinions and contradictory allegations are not facts "well pleaded," Connecticut Civil Procedure, Vol. I, Stephenson § 116 (c). The court will deal with the breach of contract claims first.
(1)
The contract alleged here is a promise not to commence demolition work unless a specific agreement to do so had been entered into. The alleged breach is the actual doing of the demolition work without the agreement having been entered into. Even giving the pleadings their most favorable reading there is no legally sufficient contract claim here because there is no allegation of consideration. To constitute sufficient CT Page 13197 consideration for a promise an act or promise not only must be a detriment to the promisee but must be bargained for and given in exchange for the promise, Fisher v. Jackson, 142 Conn. 734
(1955). The plaintiff claims that its allegation that the defendants were allowed to stay on the property (presumably with their equipment) was consideration for the "promise" to forbear demolition until an agreement to do so was entered into. But there is no allegation that allowing the defendant's to stay on the property was (1) bargained for in relation to the promise not to do any demolition work or (2) agreed to and given in exchange for that promise. Allowing the defendants on the property was, for all the court can assume, merely a step taken to put the defendants in a position to do the demolition work if an agreement were to have been made, id. at page 737. The motion to strike is granted as to the sixth count (contract claim).
(2)
The third count lies in absolute nuisance. The defendants maintain that based on the allegations of the complaint an important element of nuisance has not been alleged and therefore the nuisance count is legally insufficient. The allegations of the complaint define the tortious act as the dismantling of a portion of the building on a specific date which led to the collapse of the whole building. The defendant argues that one of the distinguishing features of nuisance as opposed to an action in negligence is the fact that continuing or recurring activity is involved. General statements to the following effect support this position:
 "The essence of a nuisance is that it is a continuing or recurring thing, which has a tendency to cause damage or inflict injury." Connecticut Law of Torts, 3d Ed, Wright, Fitzgerald, Ankerman § 128, page 369.
 Nuisance as a general rule, involves the idea of continuity or recurrence; the maintenance of a nuisance ordinarily implies a continuity of action over a substantial period of time, and the continuance of the acts constituting the nuisance for an unreasonable period. . . . under some circumstances a single act may be sufficient to establish the maintenance or continuance CT Page 13198 of a nuisance. Hence where a single act produces a continuing result, the offense — nuisance — may be complete without a recurrence of the act," 58 Am.Jur.2d "Nuisance," § 77, page 730.
Thus, it has been said that: "The whole idea of nuisance is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury . . . A single isolated occurrence or act which if regularly repeated would constitute a nuisance, is not a nuisance until regularly repeated," Southeastern Liquid Fertilizer Co. v. O. D. Chapman etal, 120 S.E.2d 651, 653 (Ca., 1961), cf Morin v. City of Valdosta,231 S.E.2d 133, 134 (Ga, 1976).
However, the law in this area is not as clear as the just quoted statements would indicate. Prosser Keaton on Torts says at § 86 page 616.
 There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word `nuisance.' It has meant all things to all people and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition.
As the Am Jur quotation suggests according to some courts, a single act may be a nuisance where it produces a continuing result. Green v. Blanton, 362 S.E.2d 179, 181 (S.C. 1987) supports that position, but what exactly is a "continuing result"? InGreen an adjacent landowner sued an operator of a dump after smoldering cotton produced obnoxious smoke forcing the family to leave their home, a later fire caused extensive soot damage to the home. Also see Williams v. Cross 655 W2d 198, 201 (Tenn. 1932) where the court also said a nuisance could be established by a single act producing a "continuing result" — "the offense may be complete without a recurrence of the act." But the facts of the case indicate that the harm was brought about by the continuing use of the privy over a period of time apart from the effect that the pollution of the plaintiff's land was a continuing type of harm. CT Page 13199
Some cases have even gone beyond what may be dicta in Green
and Williams. Thus in Ambrosini v. Alesal Sanitary District317 P.2d 331 (Cal. 1957) a nuisance claim was made for injuries to a celery crop caused by the overflow of a sewage line. Quoting from an early edition of Prosser the court said:
 "There is also no merit in the defendant's contention that a single act is not a nuisance. Prosser states . . . the duration of recurrence of the interference is merely one — and not necessarily a conclusive — factor in determining whether the damage is so substantial as to amount to a nuisance," id p. 37.
Using a similar approach to Ambrosini the court in Coty v.Ramsey Associates, Inc., 546 A.2d 196 (Vt., 1988) found the farm operations complained of were in fact "continuous" but in dicta which seems to express the law of the state the court did say:
 The duration of a particular condition is an important factor in determining whether the interference caused is sufficiently substantial to be deemed a nuisance but is not a dispositive one," id p. 201.
Seemingly supporting the Ambrosini and Coty courts the discussion in the Restatement (Second) Torts 2d can be cryptic but it does say in Section 821 F comment (g) at page 108:
 The decisions do not, however, support a categoric requirement of continuance or recurrence in all cases as an established rule of law. If the defendant's interference with the public right or with the use and enjoyment of land causes significant harm and his conduct is otherwise sufficient to subject him to liability for a nuisance, liability will result, however brief in duration the interference or harm may be. Thus when a magazine of explosives, which has caused no harm, explodes and shakes the plaintiff's adjoining building to pieces, liability may be based on the ground of a private nuisance; and the same is true when CT Page 13200 the defendant, spraying his land with insecticide for five minutes, ruins the plaintiff's adjoining crops. So likewise, a public nuisance may consist of a single unlawful prize fight or indecent exposure or a two-minute obstruction of the public highway that causes particular harm such as personal injury to the plaintiff.
But what is "significant harm" and what is "substantial harm" that will result in a nuisance?
There are not many cases on point in our state but an older case seems to support the view that for a nuisance to be established "the danger must have been a continuing one", DeMarev. Guerin 125 Conn. 362, 365 (1939), Warren v. Bridgeport,129 Conn. 355, 359 (1942) gives that interpretation to the case, also see Zatkin v. Katz 126 Conn. 445, 449 (1940). In Kostayal v. Cass,163 Conn. 92, 100 (1972), the court says a necessary element to nuisance is that "the danger created must have been a continuing one," also see Filisko v. Bridgeport Hydraulic Co. 176 Conn. 33,35-36 (1978), Heilig v. LeQuire, 4 Conn. App. 125, 127 (1985),Dingwell v. Litchfield, 4 Conn. App. 621, 624 (1985).
Our state seems to adopt the requirement of continuing danger or continuing tortious activity for a nuisance claim — which makes sense since the "continuing result" and "substantial harm" test of Green and Ambrosini present a quagmire and do not sufficiently distinguish this tort from an ordinary trespass or negligence action.
Using this test and keeping Amodio v. Cunningham in mind should the negligent count here be stricken? The complaint says that on July 3, 1995 the defendants were operating a hydraulic excavator (par. 16), at that time and place the entire building's collapse resulted in damage to adjacent properties (par. 18). The Revised Complaint goes on to allege:
 19. The collapse of the Building occurred while the operator of the hydraulic excavator was dismantling or in the process of dismantling a portion of the Building.
 20. The collapse of the Building was caused by the operation of the hydraulic excavator.[1]
CT Page 13201
Under Connecticut and more traditional analysis, which requires a continuing danger causing the harm, it does not seem that this element of nuisance is established. The complaint most favorably read states at a specific time the operation of a machine caused the building to collapse. In fairness to the plaintiff, however, it should be noted that even in Connecticut the requirement of "continuing danger" need not involve exposure of another or his property to danger over a long period of time — it just cannot be a single act producing the harm. Thus in Warren v. Bridgeport, supra the nuisance there was the operation of a poorly lit, dark city vehicle on a highway for a period of time on one night. But the obligation of a court to give the nonmoving pleadings the most favorable reading possible does not include a right to amend pleadings and furthermore a court has a right to require that legal issues be clearly defined, P.B. § 108. The court can only interpret the revised complaint as stating the building collapse occurred as the result of a single act of the operator of a machine in using that machine as opposed to an allegation that the operation of the machine, for example, over a period of several hours caused the collapse by vibrations produced or otherwise.
In any event, the motion to strike the third (nuisance) count is granted as is the motion to strike the sixth (contract) count.
CORRADINO, J.