[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
A motion to strike the Fourth Count of the Third Revised Complaint has been filed by Judith Goldman, Executrix of the estate of her deceased husband.
It is the court's understanding that the motion to strike is to apply to the Third Revised Complaint. And the only claim made pursuant to the motion to strike is that the allegations of the complaint are not legally sufficient to establish that the defendant executrix is engaged in trade or commerce and thus a claim under the Connecticut Unfair Trade Practices Act (§ 42a-110a, et seq.) cannot be made.
The standards to be applied on a motion to strike are wellknown; the pleading of the nonmoving party must be given the most favorable inferences in opposition to the motion. Amodio v.Cunningham, 182 Conn. 80, 82 (1980).
The CUTPA claim is laid out in the Fourth Count of the Third CT Page 9667 Revised Complaint. The first 37 paragraphs set forth a claim that a certain law firm negligently represented the plaintiff in a transaction involving the purchase of land for development by the plaintiff. In the thirty-seventh paragraph, it is stated that a civil action was filed against that law firm based on a claim of negligent advice which deprived the plaintiff of a business opportunity. The firm was sued as well as Mr. Goldman, an attorney with the firm. Suit was brought in 1989 and Attorney Goldman died in 1992. His wife, Judith Goldman, became executrix of the estate and, upon her husband's death, his estate was administered by her (par. 7).
On May 20, 1993, the defendants, including Mrs. Goldman, "orally settled" the previously mentioned case in court and agreed to execute a promissory note which obligated the defendants to make payment of $60,000 in 11 installments (par. 39). Based on this representation, the action was withdrawn. A formal settlement agreement was drawn up but it is alleged that the defendants, including Mrs. Goldman, have not made any payments (par. 41-43).
Thereafter, another settlement agreement was entered into between one of the individual defendants and the executrix Goldman in September 1995 wherein a note was executed and an agreement to pay a certain amount of cash was made, however the agreement has not been complied with and no monies have been paid as required by the contract (par. 47, 49).
The plaintiff goes on to allege that the various settlement agreements and withdrawal of the previously mentioned civil action all created an implied contract between the parties which gave the plaintiff enforceable rights for breach of any such agreement. A breach has occurred and the plaintiff has been damaged (par. 50-59).
Paragraph 62 alleges two defendants, lawyers in the firm who are referred to as defendants throughout the complaint, and the executrix Goldman represented they would turn over monies pursuant to the settlement agreements but they did not and Goldman's failure to comply "coupled with [her and another co-defendants'] willful deception" constitutes substantial aggravating circumstances surrounding breach of the settlement agreements (par. 63). The plaintiff has demanded that the other defendants and Goldman comply with the settlement agreements but "these defendants unfairly and deceptively withheld monies from CT Page 9668 [the plaintiffs] after the settlement agreement was reached (par. 65); nothing in the way of specific factual allegations are made to support these characterizations.
Paragraph 66 alleges the actions of the defendants, including Goldman, were immoral, unethical, offended public policy, oppressive, unscrupulous and unfairly tended to injure the public in violation of CUTPA. Paragraph 67 states that:
 By negotiating settlement agreement, making contractual obligations, breaching contracts and breaching implied contracts on behalf of the estate, Judith Goldman has engaged in trade or commerce by administering the Estate of Jerome Goldman.
These are the factual allegations supporting the CUTPA claim. But the claim raised by the motion to strike is narrowly focused. There is no claim made here that a breach of a settlement agreement or implied contract cannot result in a CUTPA violation because, for example, sufficiently aggravating or immoral and oppressive circumstances surrounding the breach have not been set forth. Cf. Designs in Stone, Inc. v. John Brennan ConstructionCo., Inc., 21 Conn. L. Rptr. 659 (1988).
The issue raised by this motion is only that the factual allegations do not set forth a sufficient factual basis to establish that Mrs. Goldman, as executrix, was engaged in trade or commerce when she acted as it is alleged she did, therefore, she can not be subject to CUTPA.
Section 42-110 (b)(a) states that: "No person shall engage . . . in unfair or deceptive acts or practices in the conductof any trade or commerce." (Emphasis added.) In other words, to be subject to liability under the act, the person must not merely do something unfair or deceptive when he or she is so acting, the person must do so "in the conduct of any trade or commerce."
The issue "is whether an act that is isolated from or not part of any ongoing business is in trade or commerce and hence is covered by CUTPA." Connecticut Unfair Trade Practices Act, Langer, Morgan and Belt, Vol. I, § 3.2, page 45. This court recently decided that a sale by a person of his or her residence, where the person does not otherwise engage in real estate transactions does not fall under the act. Wallenta v. Moscowitz, CV96-0052135S, 22 CONN. L. RPTR. 428 (Milford Superior Court, 1988) (copy of opinion CT Page 9669 attached as appendix). As noted in Wallenta, there is a split of authority as to whether CUTPA applies to someone engaged in a single transaction who does not ordinarily engage in such a business transaction. Of course, CUTPA can apply to a single transaction but, as pointed out in McCarthy v. Fingelly, 4 CONN. L. RPTR. 177 (1991) (Katz, J.), "the issue is not whether the litigant is required to allege more than a single transaction but whether CUTPA applies to a single private transaction by a person not employed in the business of making such transactions."
In Wallenta, this court agreed with McCarthy and relied in part on the reasoning of the case of Lantner v. Carson,373 N.E.2d 973 (1973, Mass.) which concluded that the Massachusetts act was meant to control business and that there was no intention to have these consumer protection acts apply, for example, to single transactions by persons not engaged in the business of making such transactions. The court relied on what it felt was the original purpose of the Clayton Act of 1914 and the 1938 Wheeler Amendment which extended the protection of the Federal Trade Commission Act to consumers, see § 42-110(b)(b) and reference to that federal act as a guide to our courts.
The question presented here then is, given this view of CUTPA and the facts alleged here, can the executrix of this estate be said to have engaged in trade or commerce while committing the acts alleged to have been "unfair or deceptive"? (§ 42-110 (b)(a).
One case cited by the plaintiff is not helpful because this issue was not explicitly raised in the suit brought against two executors which alleged a CUTPA violation. Jaworski, et al. v.Anderson, et al., 1997 W.L. 537097. That case assumed that a CUTPA action would lie against the executors and turned on whether an "ascertainable loss" was sufficiently alleged so as to warrant the CUTPA claim. Darlow v. Shawmut Bank N.A., 1996 W.L. 661806, however, is more on point. There, Shawmut Bank was serving as the executor of the estate and the court held in denying a motion to strike the CUTPA claim against the bank that the "trade or commerce" requirement of CUTPA was met since the plaintiff alleged Shawmut Bank engaged in the trade or commerce of administering the estates of conserved people and that Shawmut received fees for its services as a conservator.
The defendant argues that here there is no allegation Mrs. Goldman administered estates as a trade or business or in any event received any fees for her services as an executrix. CT Page 9670
But whether or not it is alleged or in fact it is true that the defendant Goldman received a fee for her services should not be determinative if whether she acted in trade and commerce. The federal act like ours is concerned with the effect of the actions of persons or businesses on trade or commerce as regards competitors or consumers. What difference should it make whether the entity accused of anti-competitive acts or unfair or deceptive acts or practices does so for profit or not; for example, why shouldn't these consumer protection acts protect people and businesses against non-profit businesses or activities. The actions of such entities, if deleterious under the act would have the same harmful effects on trade or commerce as similar acts engaged in for profit and such entities, for all intents and purposes, act as businesses in trade or commerce.
In fact Congress felt it necessary to specifically exempt certain non-profit corporations from FTIC coverage — why was that necessary if as a predicate matter of definition non-profit businesses are not covered by the act because they do not act in trade or commerce, see § 15 U.S.C. § 44, cf. CommunityBlood Bank of Kansas City Area, Inc. v. F.T.C., (405 F.2d 1011,1015 (C.A. 8, 1969). There is no such language of exemption in our act.
The defendant's claim that she did not act in trade and commerce and thus is not subject to CUTPA was reflected in defense counsel's oral argument on this motion. After arguing the defendant received no fee for her services, counsel argued in any event that the third revised complaint merely alleges that the defendant negotiated certain settlements, made contractual obligations and breached those obligations and implied contracts. Counsel then maintained that he did not believe "that those predicate allegations are factual allegations that would support a conclusion that the defendant executrix is engaged in trade or commerce of administering an estate . . . [counsel did not] think as a matter of law that attempting to settle a case can be engaging in trade or commerce", page 13 of transcript ordered by court. Earlier at pages 9 to 10 counsel referred to Darlow v.Shawmut, supra, and distinguished his client's case from that case by saying there is not allegation here that, like Shawmut bank, this defendant . . . is engaged in the business of administering estates . . ."
The problem with the defendant's argument at least from the CT Page 9671 court's perspective, is that it focuses solely on the specific allegations of the complaint regarding the involvement with the settlement of a possible claim against the estate. But the court must give to the complaint its most favorable reading, Amodio v.Cunningham, supra, and this complaint specifically alleges the defendant is the executrix of her husband's estate and that it is administered by her. The actions taken to settle this claim, by fair inference, were part and parcel of and in furtherance of her responsibilities as administrator of this estate. This is not like Wallenta, a situation where a person engages in a single transaction and that person is not in the business of making such transactions. Here the defendant is an executrix and the court must assume has all the statutorily authorized powers and fiduciary obligations with which that position is invested regarding the administration of a deceased's property and assets and was acting in behalf of the estate's interests in this as in all her other activities in behalf of the estate.
Unlike Shawmut Bank in Darlow v. Shawmut, supra, this executrix may not be in the business of administering estates as such but she was administering this estate.
It could be argued that to hold that on this basis a defendant executrix such as the one here can be said to be engaged in trade or commerce in engaging in transactions such as the one alleged here would lead to an illogical result arrived at by conclusory reasoning. In other words, under the reasoning of a case like Wallenta if a person engages in a single transaction with another party and that person is not in the business of engaging in such transactions — such as the sale of a house — then there would be no exposure to CUTPA liability. But if the same person had been appointed an executor the next day and entered into the same transaction regarding estate business there would be CUTPA exposure although he or she was not generally in the business of administering estates and not involved in the business of engaging in that type of transaction in his or her own personal life and affairs and the estate itself was or would not be expected to be involved in such transactions on a regular basis as part of its administration.
But the foregoing discussion indicates, at least to the court, why the question of CUTPA applicability cannot be resolved on the basis of these pleadings especially in light of the fact that no request to revise has been filed. The court has no idea what the nature of the administration of this estate involves CT Page 9672 whether the alleged contractual and settlement agreements here were isolated transactions or whether the nature of the estate required the executrix to engage in a variety of business transactions, enter into numerous agreements or supervise ongoing business interests. The court could find no cases on point but similar problems would be raised in deciding whether CUTPA applied to transactions engaged in by any personal, or entity supervising the property of others in a representative or fiduciary capacity.
These matters can be raised more properly by means of a motion for summary judgment. In denying the motion to strike the court in no way has concluded that the executrix of this estate, merely because of her position, is subject to CUTPA liability because she entered into the alleged transactions and that that activity standing alone, ipso facto establishes that she was engaged in trade or commerce. The court is only saying that the issue for the court at least cannot be decided on the basis of the record before it. The motion to strike is denied for the reasons stated.
CORRADINO, J.