[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 13145
The plaintiffs, Ronda Drew and Michael Anzalone, bring this action individually and on behalf of the estate of their deceased daughter, Cassidy Ann Drew-Anzalone, against William Backus Hospital and Joseph Newell, M.D. The complaint alleges, inter alia, that the defendants were negligent in providing medical care to the decedent, Cassidy Ann Drew-Anzalone, and caused her death. In addition, the plaintiffs individually claim that the defendants negligently inflicted emotional distress upon each of them as a result of their negligent treatment of the decedent.
The complaint alleges the following facts. On or about July 26, 1997, during the early afternoon hours, the decedent, an eighteen-month old infant, was brought to the emergency room at William Backus Hospital, Norwich, because she had been vomiting, irritable and suffering from fever and pain. At approximately 4 p. m., Joseph Newell assumed responsibility as the decedent's physician and admitted the decedent to the hospital's pediatric floor. While on the pediatric floor, Newell left the decedent unattended for many hours while she continued to exhibit pain, dehydration, organ stress and anemia. At approximately 9:30 p. m., Newell assured the plaintiffs that the decedent's condition was "ok," and that the father, Michael Anzalone, could leave for work without concern. After this assurance by Newell, the decedent was left unattended for a period of 45 minutes, at the end of which period, the decedent experienced cardiopulmonary arrest. Newell and other hospital members then unsuccessfully attempted for an hour and twenty minutes to revive the decedent. At 11:35 p. m., Newell declared the decedent dead.
The plaintiffs allege that either or both of them witnessed the entire chain of events leading to their daughter's death. However, plaintiff Anzalone alleges that he was not present at the exact time of his daughter's cardiopulmonary arrest, but was informed while at work, and immediately arrived at the hospital to witness Newell and other hospital members attempt to revive his daughter. As a result of this experience, the plaintiffs each assert, inter alia, claims for negligent infliction of emotional distress against each defendant. CT Page 13146
The defendants move to strike the seventh, eighth, ninth and tenth counts of the complaint,[1] which are asserted on behalf of the plaintiffs individually against the defendants for their negligent infliction of emotional distress. The defendants assert two grounds for their motions to strike: (1) Connecticut does not recognize a cause of action for negligent infliction of emotional distress to a bystander in the medical malpractice context; and (2) alternatively, even if such a cause of action exists, the plaintiffs' allegations with respect to counts eight and ten[2]
are legally insufficient to state a valid claim.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
Because this court, as well as both parties, acknowledge that resolution of the defendants' motions to strike depends upon the applicability of Maloney v. Conroy, 208 Conn. 392 (1988) andClohessy v. Bachelor, 237 Conn. 31 (1996), to the present case, this court will examine the historical underpinnings of those cases.
The jurisprudential history of bystander emotional distress claims in Connecticut begins with Strazza v. McKittrick,146 Conn. 714, 156 A.2d 149 (1959) (hereinafter cited as "Strazza"). In Strazza the plaintiff sought to recover for emotional distress she allegedly suffered when the defendant negligently crashed his vehicle into the plaintiff's home. The plaintiff experienced emotional disturbance for fear of her own safety and that of her child. Although the Court allowed the plaintiff to recover for emotional distress caused by fear for her own safety, the Court disallowed recovery for the plaintiff's fright she suffered in mistakenly believing that her child was injured by the accident. Following the trend of the American courts which universally denied recovery for bystander emotional distress, the essence of the Strazza Court's holding was that a plaintiff cannot recover for emotional distress because of fear or sight of an injury or CT Page 13147 harm to a third party. See Strazza, supra, 146 Conn. 719.
In 1980, the Court was confronted with another bystander emotional distress claim. In Amodio v. Cunningham, 182 Conn. 80,438 A.2d 6 (1980) (hereinafter cited as "Amodio"), a plaintiff claimed that she suffered emotional distress because of witnessing the death of her daughter, which was allegedly caused by a doctor's medical malpractice. Seeking to abrogate theStrazza absolute prohibition on bystander emotional distress claims, the plaintiff urged the Court to adopt the Dillon v.Legg, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968) (hereinafter cited as "Dillon") rule, which focused on the "reasonable foreseeability" of the bystander's emotional distress.[3] The Amodio Court construed the Dillon rule to require that, in order to recover for emotional distress, the bystander must perceive the negligent act contemporaneously causing injury to the third party. See Amodio, supra,182 Conn. 92. Without formally adopting the Dillon rule as the law of Connecticut, the Amodio Court held that the plaintiff could not recover because the injuries leading to the child's death, which the plaintiff witnessed, did not manifest until "a considerable period of time" after the doctor's alleged malpractice actually occurred. Amodio, supra, 182 Conn. 93. Because the plaintiff's complaint in Amodio simply did not allege facts consistent with the Dillon rule, the Court denied the plaintiff's claim. Amodio, supra, 182 Conn. 92-93.
In 1988, the Court was confronted with a bystander emotional distress claim in a medical malpractice context similar to that of Amodio. In Maloney v. Conroy, 208 Conn. 392, 545 A.2d 1059
(1988) (hereinafter cited as "Maloney"), the plaintiff made similar allegations as the plaintiff in Amodio, but requested the Court to reconsider the Amodio holding in light of a 1985 California case, Ochoa v. Superior Court, 39 Cal.3d 159,703 P.2d 1, 216 Cal Rptr. 661 (1985) (hereinafter cited as "Ochoa"), which somewhat modified and extended the Dillon rule. In Ochoa, the California Supreme Court allowed a mother to recover for emotional distress where she actually observed the doctor's misdiagnosis and was contemporaneously aware that the misdiagnosis was causing harm to her son. The court ruled that "when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness of the defendant's conduct or lack thereof is causing harm to the child, recovery is permitted." Ochoa, supra, 703 P.2d 8. CT Page 13148
The Maloney Court was persuaded that the plaintiff's complaint would sufficiently state a bystander emotional distress claim under the Ochoa holding. Maloney, supra, 208 Conn. 397. That is, as required by the Ochoa framework, the plaintiff "alleged that she observed her mother's condition deteriorate under the care of the defendants and that her requests that certain symptoms of her mother be given attention were never heeded, implying her awareness that the defendants' neglect was harming her mother." Maloney, supra, 208 Conn. 397. Nevertheless, the Court upheld the trial court's decision to strike the complaint, "because [the Court is] not inclined to follow the lead of the California courts in allowing a bystander to recover for emotional disturbance resulting from malpractice upon another that a bystander may have observed." Maloney, supra,208 Conn. 397. The following statement makes it is clear that Maloney
narrowly applies to claims arising from the medical malpractice context, but left open the question of recovery for bystander emotional distress in other contexts for another day: "Whatever may be the situation in other contexts where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice on another person, we should return to the position we articulated in Strazza that "there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another."' Id., 402.
Thus, after the Maloney and Amodio decisions, Strazza still existed as a complete ban on any and all bystander emotional distress claims. In addition, Maloney not only left the Strazza
rule intact, but also unequivocally held that Connecticut does not recognize bystander emotional distress claims in the medical malpractice context.
In 1996, however, our Supreme Court undertook the task of finally overruling Strazza. In Clohessy v. Bachelor,237 Conn. 31, 675 A.2d 852 (1996) (hereinafter cited as "Clohessy"), the Court analyzed whether it should formally adopt the Dillon
"reasonable foreseeability" theory and recognize a bystander emotional distress cause of action. The Clohessy Court noted that while both Amodio and Maloney considered and addressed the Dillon
rule, neither case formally adopted it. See Clohessy, supra,237 Conn. 37.
Although the Amodio and Maloney Courts each denied recovery to the plaintiffs for bystander emotional distress, the Clohessy
Court noted that both Amodio and Maloney left "the door open for CT Page 13149 the foreseeability rule as set forth in Dillon." Clohessy, supra,237 Conn. 37. Its prior decisions in Amodio and Maloney never
presented "the court with an opportunity to make a definitive ruling on whether to recognize a cause of action for bystander emotional distress." Clohessy, supra, 237 Conn. 44. This was because Amodio and Maloney involved medical malpractice as the underlying negligent act — where "there generally is no significant observable sudden traumatic event by which the effect upon the bystander can be judged." Clohessy, supra, 237 Conn. 44. Thus, the Court's objective in Clohessy was "to reexamine this court's holding in Strazza in light of Amodio and Maloney and the law regarding bystander emotional distress that has developed over the last four decades." Clohessy, supra, 237 Conn. 44.
The Court expressly overruled the Strazza absolute ban on recovery by bystanders for their emotional distress due to injuries to others. Clohessy supra, 237 Conn. 46. "Under certain circumstances . . . we conclude that a tortfeasor may owe a legal duty to a bystander. . . . [and] a tortfeasor who breaches that duty through negligent conduct may be liable for a bystander's emotional distress proximately caused by that conduct." Clohessy, supra, 237 Conn. 46. "Accordingly, for a cause of action for bystander emotional distress, we adopt the reasonable foreseeability rule subject to the following [four] conditions."Clohessy, supra, 237 Conn. 51. The bystander must prove that: "(1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Clohessy, supra, 237 Conn. 56.
The trial courts in this state have become quite confounded in attempting to reconcile the coexistence of Clohessy and Maloney. Some courts hold that Maloney either was overruled byClohessy, or now is only narrowly applicable to its limited factual circumstances; therefore, Clohessy permits bystander emotional distress claims in any context, including medical malpractice, provided that the four Clohessy factors are met. See, e.g., Blanchette v. Desper, Superior Court, judicial CT Page 13150 district of Waterbury, Docket No. 144050 (October 19, 1998, Shortall, J.) (23 Conn. L. Rptr. 321); Rios v. Kozlowski, Superior Court, judicial district of Hartford, Docket No. 576510 (August 24, 1998, Teller, J.) (22 Conn. L. Rptr. 564); Bond v.Kalla, Superior Court, judicial district of New London, Docket No. 543295 (April 13, 1998, Koletsky, J.) (21 Conn. L. Rptr. 682).
Other courts hold that because the Clohessy Court failed to explicitly overrule Maloney, it still remains good law in holding that bystander emotional distress claims in the medical malpractice context are absolutely not allowed. See, e.g., Martinv. Waradzin, Superior Court, judicial district of New Haven, Docket No. 404366 (April 2, 1998, Hartmere, J.) (21 Conn. L. Rptr. 616); Chabot v. Day Kimball Hospital, Superior Court, judicial district of Windham at Putnam, Docket No. 053562 (February 27, 1992, Sferrazza, J.); Wildman v. ConnecticutAllergy and Asthma Associates, P.C., Superior Court, judicial district of Fairfield, Docket No. 334473 (December 16, 1996, Levin, J.) (18 Conn. L. Rptr. 453).
Although I continue to believe there are instances where the rule in Maloney should apply; see, e.g., Colon v. Barczak, Superior Court, judicial district of New London at New London, Docket No. 537729 (July 17, 1997, Hurley, J.) (20 Conn. L. Rptr. 121) (granting defendants summary judgment where plaintiff-bystander alleged he witnessed gradual deterioration of wife's condition over course of two weeks); this court agrees with the line of cases which hold that Clohessy has firmly established a cause of action for bystander emotional distress in Connecticut regardless of whether the action arises from medical malpractice. In this court's view, Connecticut now offers a remedy to any bystander in any context who can satisfy the fourClohessy factors. "Much is made of the fact that while Clohessyv. Bachelor overruled the case of Strazza v. McKittrick . . . theClohessy court declined to overrule Maloney, although theClohessy opinion discusses Strazza and Maloney in the same context." Bond v. Kalla, supra, 21 Conn. L. Rptr. 682. However, it was simply not necessary to overrule Maloney because Maloney's
holding is not inconsistent with Clohessy. That is, as the trial court found, and the Supreme Court upheld in Maloney the plaintiff did not allege that she suffered an injury contemporaneous with her perception of the alleged medical malpractice of the defendants. Maloney, supra, 208 Conn. 396. It is clear that even under the Clohessy test, the plaintiff in CT Page 13151Maloney would have failed to state a valid claim for bystander emotional distress.
As stated previously, Maloney was decided in 1988, a time when Connecticut courts still faithfully adhered to the Strazza
absolute ban on any bystander emotional distress claim. Thus, at a time when no cause of action for bystander emotional distress existed in any context whatsoever, the plaintiff argued before the Maloney Court that Connecticut should follow the California trend as set out in Dillon and Ochoa. Before blazing such a new trail, however, the Maloney Court necessarily would have had to overrule Strazza. Instead of doing that, the Maloney Court leftStrazza intact, and announced its decision to not follow the California trend.
As in Amodio, the Maloney Court was faced with a fact pattern involving medical malpractice as the underlying negligent conduct allegedly causing the plaintiff-bystander emotional distress. TheMaloney Court viewed the Dillon and Ochoa guidelines as ineffective "in screening out claims of any family member for the grief he has suffered from the loss of a loved one." Maloney, supra, 208 Conn. 402. Thus, the fact pattern in Maloney, which involved a bystander's noncontemporaneous perception of medical malpractice, simply did not present the proper opportunity for Connecticut to finally adopt the Dillon rule and recognize a cause of action for bystander emotional distress. The Maloney
Court apparently left that determination open for another day in another context.
In addition, the scope of the Maloney holding is very narrow, and fits squarely within the contours of the Clohessy framework. The Maloney Court was careful to limit its holding to "the circumstances pleaded in the complaint." Maloney, supra,208 Conn. 404. Indeed, those circumstances pleaded in the complaint addressed by Maloney would similarly fail to state a valid claim under Clohessy. As the facts before the Maloney Court demonstrate, it is very difficult for any plaintiff to state a valid bystander emotional distress claim when medical malpractice is the underlying negligent conduct. The Clohessy Court acknowledged the difficulty a plaintiff faces in attempting to prove bystander emotional distress in the medical malpractice context, "because there generally is no significant observable sudden traumatic event by which the effect upon the bystander can be judged." (Emphasis added.) Clohessy, supra, 237 Conn. 44. CT Page 13152
This court recognizes how difficult it is for a plaintiff to successfully allege and prove a cause of action for bystander emotional distress in the medical malpractice context. As theClohessy Court states, "there generally is no significant observable traumatic event" for a plaintiff to contemporaneously observe and thereby suffer emotional distress. Id., 44. However, it is not hard to envision particular instances where a plaintiff, who is closely related to a medical patient, actually observes an act of medical malpractice and contemporaneously suffers emotional distress as a result. As an extreme example, suppose a woman accompanies her husband in an emergency room and watches as the doctors attempt to apply a heart defibrillator in order to prevent the patient from dying of a heart attack. Negligently, however, the doctors misapply the defibrillator and, consequently, electrocute and kill the patient. If the plaintiff has observed this entire tragic episode, and contemporaneously suffers serious emotional distress, what good reason is there for denying the plaintiff recovery for her emotional distress?
During the pre-Clohessy era, it is accepted that the plaintiff in the above situation would have no remedy for her emotional distress. Some trial courts still believe, however, that even after Clohessy there would not be a valid claim for bystander emotional distress in the above situation simply because the context entails medical malpractice. This court chooses not to read Maloney as a blanket prohibition on all bystander claims involving medical malpractice. Accord Blanchettev. Desper supra, 23 Conn. L. Rptr. 322. In light of Clohessy, this court recognizes Maloney for disclosing and analyzing the weaknesses of a bystander claim for emotional distress under the precise circumstances of that case. However, if there are circumstances in the medical malpractice context where a plaintiff can allege and prove all four Clohessy criteria, then recovery should not be denied.[4]
Turning to the present case, if the allegations in the complaint satisfy the four Clohessy factors, then the defendants' motions to strike will be denied.
Both parties allege that they were present during the alleged negligent treatment of their daughter and contemporaneously observed such conduct. The decedent's mother, Ronda Drew, "was present in the room with Cassidy and observed Cassidy's eyes roll back in her head before Cassidy's pulmonary arrest was recognized by the staff, and desperately called for help for her child." CT Page 13153 Complaint, Count 7 ¶ 25. Plaintiff Michael Anzalone, the decedent's father, alleges that he was informed of his daughter's cardiopulmonary arrest after having left the hospital, and immediately returned to the hospital "while the "code' team was working on his daughter." Complaint, Count Nine ¶ 26. As a result of witnessing the alleged malpractice, or arriving immediately thereafter, Drew and Anzalone allegedly suffered serious emotional distress.
In construing the allegations in a manner most favorable toward sustaining their legal sufficiency, the court finds that the plaintiffs have alleged: (1) that they are closely related to the decedent; (2) that their emotional distress was caused by a contemporaneous sensory perception of the alleged malpractice, or they arrived to the scene soon thereafter; (3) that the third party upon whom the defendants allegedly committed malpractice died as a result; and (4) that their emotional distress was serious. Thus, the plaintiffs have sufficiently pleaded facts satisfying the four Clohessy factors, and, moreover, have sufficiently pleaded facts which are distinguishable and well beyond the ambit of the circumstances before the Maloney Court.
Accordingly, the motions to strike (#105) and (#107) are denied as to counts seven, eight, nine and ten; the court notes the plaintiffs' voluntary withdrawal of counts three, four, five and six as they are legally insufficient, and grants the motions to strike as to those counts.
D. Michael Hurley, Judge Trial Referee